Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge JONES joined. Judge Jones wrote a separate concurring opinion. Judge GREGORY wrote a separate opinion concurring in part and dissenting in part.
*330 OPINION
NIEMEYER, Circuit Judge:
Dwight Whorley was convicted of (1) knowingly receiving on a computer 20 obscene Japanese anime cartoons depicting minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 1462; (2) knowingly receiving, as a person previously convicted of receiving depictions of minors engaging in sexually explicit conduct, the same 20 anime cartoons, in violation of 18 U.S.C. § 1466A(a)(l); (3) knowingly receiving, as a person previously convicted of receiving depictions of minors engaging in sexually explicit conduct, 14 digital photographs depicting minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2); and (4) knowingly sending or receiving 20 obscene e-mails, in violation of 18 U.S.C. § 1462. Imposing a sentence that departed upward from the recommended Sentencing Guidelines range, the district court sentenced Whor-ley to 240 months’ imprisonment.
On appeal, Whorley contends principally that the statutes under which he was convicted are unconstitutional. He claims (1) that § 1462 is facially unconstitutional in prohibiting receipt of obscene materials because receiving materials is an incident of their possession, and possession of obscene materials is protected by the holding of Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); (2) that § 1462 is facially unconstitutional because the term “receives,” when used in the context of a computer, is unconstitutionally vague; (3) that § 1462 is unconstitutional as applied to text-only e-mails, arguing that text alone cannot be obscene; and (4) that § 1466A(a)(l) is unconstitutional under the First Amendment, as applied to cartoons, because cartoons do not depict actual minors. In addition to his constitutional challenges, Whorley challenges numerous procedural rulings by the district court and the reasonableness of the sentence that it imposed.
Because § 1462 punishes trafficking in commerce, not the mere possession of obscene materials, and “receives” has a uniform meaning that is readily understood, we reject Whorley’s facial challenges. We also reject his arguments that textual matter cannot be obscene under § 1462 and that cartoons depicting minors in sexually explicit conduct must depict real-life minors to violate § 1466A(a)(l). Finally, we reject his challenges to the district court’s procedural rulings and his sentence. Accordingly, we affirm.
I
The Virginia Employment Commission maintains a public resource room in Richmond, Virginia, where job seekers may use Commission copiers, computers, and printers for employment-related purposes.
On March 30, 2004, a woman in the resource room informed a Commission employee that Dwight Whorley was viewing what appeared to be child pornography on a Commission computer. In response, the office manager and two supervisors went to the resource room and saw Whorley standing in front of the printer with papers in his hand. Upon request, Whorley showed the supervisor the documents, which depicted Japanese anime-style cartoons of children engaged in explicit sexual conduct with adults. Determining that the documents were an inappropriate use of state computer equipment, the manager banned Whorley from using the Commission’s computers and escorted him from the premises.
Returning to the computer that Whorley had been using, the Commission employees found that his YAHOO! e-mail account was still open, and they also found several more copies of anime-style cartoons by the *331 computer. After printing off several emails from that account and taking the computer out of service, the manager called his supervisor and the state police. Subsequently, the manager also provided Whorley’s probation officer with copies of the documents. (Whorley was on probation in connection with a previous federal conviction for downloading child pornography on a Virginia Commonwealth University computer in 1999.) Later, the FBI obtained more information from YAHOO! about Whorley’s e-mail account.
Based on the matters copied, the data contained in the computer used by Whor-ley, and the information received from YAHOO!, a grand jury returned a 75-count indictment against Whorley. Counts 1-20 charged Whorley with using a computer on March 30, 2004, to knowingly receive obscene cartoons in interstate and foreign commerce, in violation of 18 U.S.C. § 1462. The 20 cartoons forming the basis of those counts showed prepubescent children engaging in graphic sexual acts with adults. They depicted actual intercourse, masturbation, and oral sex, some of it coerced. Based on the same cartoons, the jury also charged Whorley in Counts 21-40 under 18 U.S.C. § 1466A(a)(l) with knowingly receiving, as a person previously convicted of illegally downloading child pornography, obscene visual depictions of minors engaging in sexually explicit conduct. In addition, the grand jury charged Whorley in Counts 41-55 with knowingly receiving, on March 11 and 12, 2004,15 visual depictions of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). These counts were based on lascivious photographs of actual, naked children. Finally, the grand jury charged Whorley in Counts 56-75 with sending or receiving in interstate commerce 20 obscene e-mails during the period between February 5, 2004, and April 2, 2004, in violation of 18 U.S.C. § 1462. The e-mails described sexually explicit conduct involving children, including incest and molestation by doctors.
At trial, evidence from the Commission computer showed that Whorley conducted numerous searches on March 11 and 12, 2004, through the YAHOO! search engine, using the query “child sex play.” The pictures of the naked children obtained from those searches came from an Illinois website called “Logical Reality.” It also showed that on March 30, 2004, Whorley obtained the 20 Japanese cartoons from a site called “Fractal Underground Studio.” On the same day, he sought eight times to open sites that had been blocked on the Commission’s computers.
Following trial, the district court dismissed Count 41 for a lack of evidence that the individual depicted in the picture was a minor, and the jury convicted Whorley of the remaining 74 counts.
At sentencing, the district court granted the government’s motion for an upward departure, although not to the extent sought by the government. The departure was based on numerous factors, including Whorley’s history of downloading child pornography, which was not represented in the recommended Guidelines calculation because, except for the 1999 conviction, the prior conduct had not resulted in Whor-ley’s prosecution and conviction. The court also noted Whorley’s repeated failure to abide by the terms of supervised release from his prior conviction, including
continuing to access computers without the probation officer’s approval, numerous false statements concerning attempts to obtain employment, failure to obtain employment, failure to report to the Department of Rehabilitation Services, failure to report to the Offender Aid and Restoration Program, and most disturbingly, his pres *332 ence at local malls and public libraries frequented by children in direct disobedience of his probation officer’s instructions.
Also contributing to the decision to depart upward was Whorley’s failure “to make a good faith effort to control his sexual deviance” and the “increasingly sadistic and violent” nature of the prepubescent erotica recovered from Whorley. After increasing Whorley’s criminal history from a Category III to a Category VI, the most serious category, the district court found that the base offense level of 27 still yielded a sentencing range below the mandatory minimum statutory sentence of 180 months. The court therefore moved down the sentencing table to an offense level 32, see U.S.S.G. § 4A1.3(a)(4)(B), and sentenced Whorley to 240 months’ imprisonment, which was 60 months above the recommended Guidelines sentence but which fell within the lower half of the statutory range of 180 to 480 months.
From the judgment of conviction, this appeal followed.
II
Whorley contends first that 18 U.S.C. § 1462 is facially unconstitutional because “it makes no exception for the private receipt, possession, or viewing of obscene material,” as, he argues, such conduct is protected by the First Amendment and its application in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). In Stanley, the Supreme Court held that a Georgia statute prohibiting the possession of obscene matter, even within the home, was incompatible with the First and Fourteenth Amendments. Id. at 568, 89 S.Ct. 1243. Finding the statute too broad, the Court explained that “traditional notions of individual liberty” and the paramount importance accorded in our society to the “privacy of a person’s own home” create a “right to be free from state inquiry into the contents of [one’s home] library.” Id. at 565, 89 S.Ct. 1243. Thus, the government’s regulatory “power simply does not extend to mere possession [of obscene materials] by the individual in the privacy of his own home.” Id. at 568, 89 S.Ct. 1243.
But Stanley’s holding was a narrow one, focusing only on the possession of obscene materials in the privacy of one’s home. The Court’s holding did not prohibit the government from regulating the channels of commerce. In an unbroken line of Supreme Court decisions since Stanley, the Court has repeatedly rejected the notion, urged by Whorley, that as a matter of logic, because the First Amendment prohibits the criminalization of private possession of obscene materials within the home, there exists a correlative “right to receive” obscene materials. See United States v. Reidel, 402 U.S. 351, 354-55, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971) (explicitly rejecting the notion that Stanley’s recognition of the defendant’s right to possess obscenity meant that “someone must have the right to deliver it to him” through the channels of commerce (internal quotation marks omitted)); see also Smith v. United States, 431 U.S. 291, 307, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977) (“Stanley did not create a right to receive, transport, or distribute obscene material, even though it had established the right to possess the material in the privacy of the home”); United States v. Orito, 413 U.S. 139, 141, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973) (holding that Stanley’s tolerance of obscenity within the privacy of the home created no “correlative right to receive it, transport it, or distribute it”); United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 376, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) (“That the private user under Stanley may not be prosecuted for possession of obscenity in *333 his home does not mean that he is entitled to import it from abroad free from the power of Congress to exclude noxious articles from commerce”).
And § 1462 falls squarely within this line of cases authorizing the regulation and prohibition of obscene materials in commerce. It provides:
Whoever brings into the United States ... or knowingly uses any express company or other common carrier or interactive computer service ... for carriage in interstate or foreign commerce—
(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or
Whoever knowingly takes or receives, from such express company or other common carrier or interactive computer service ... any matter or thing the carriage or importation of which is herein made unlawful—
Shall be fined under this title or imprisoned not more than five years....
18 U.S.C. § 1462. The focus of the statute’s prohibition is on the movement of obscene matter in interstate commerce, not its possession in the home. This is manifested by the statute’s prohibition of receiving obscene material from any “express company,” “common carrier,” or “interactive computer service.” By focusing on the movement of obscene material in channels of commerce, and not on its mere possession, § 1462 is not governed by Stanley, but rather is akin to the Reidel line of cases decided after Stanley. Accordingly, we reject Whorley’s constitutional argument based on Stanley.
Ill
Whorley contends also that § 1462 is facially unconstitutional because its use of the word “receives” in prohibiting the receipt of obscene matter using instruments of interstate commerce makes the prohibition impermissibly vague in the context of receiving obscene matter from an interactive computer service. He maintains that “receives” is so broad that the statute ensnares the unwitting recipient of obscenity, such as one who innocently receives an “obscene textual message [sent] to a person’s e-mail account” from a malicious third party, or finds to his dismay that an obscene image appears “as a ‘pop-up ad’ or as part of a paid sponsor’s rotating advertisement.” Consequently, he argues that “§ 1462 fails to give notice to the average person of when criminal liability attaches.”
“A statute is impermissibly vague if it either (1) ‘fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits’ or (2) ‘authorizes or even encourages arbitrary and discriminatory enforcement.’ ” Giovani Carandola, Ltd. v. Fox, 470 F.3d 1074, 1079 (4th Cir.2006) (quoting Hill v. Colorado, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)). Stated differently, a court considering a vagueness challenge must determine if the statutory prohibitions “‘are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with.’ ” Broadrick v. Oklahoma, 413 U.S. 601, 608, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (quoting United States Civil Serv. Comm’n v. Nat’l Ass’n of Letter Carriers, 413 U.S. 548, 579, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973)).
In this case, Whorley’s argument, when analyzed more closely, in fact suggests no vagueness or misunderstanding about the scope of the word “receives.” Giving that *334 term its ordinary meaning, see Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187, 115 S.Ct. 788, 130 L.Ed.2d 682 (1995), his argument assumes that “receives” means to “come into possession of,” to “acquire,” or “to have delivered or brought to one,” see Merriam-Webster’s Collegiate Dictionary 975 (10th ed.1994); Webster’s Third New International Dictionary 1894 (3d ed.1993); Random House Dictionary of the English Language 1610 (2d ed.1987). As he articulates it, Whorley’s complaint about receiving obscene material unwittingly — i.e., without an intent to receive it — does not find confusion in the word “receives,” but rather in the type of intent with which one can “receive” something. To be sure, one can “receive” obscene materials intentionally and knowingly, or negligently, or by mistake or accident. Section 1462, however, does not criminalize every receipt of obscene materials, but only the “knowing” receipt of them. It is thus apparent that in making his argument that “receives” is too vague, Whorley actually confuses mens rea with the question of whether the word “receives” itself is without sufficient meaning to be readily understood.
Whorley is probably correct in observing that evolving computer technology will constantly change the ways in which a person’s computer may be used to “receive” obscene material from an interactive computer service and that those changes might, depending on the technology, present serious questions as to whether such material can be said to have been “received.” But no such question exists here where Whorley actively used a computer to solicit obscene material through numerous and repetitive searches and ultimately succeeded in obtaining the materials he sought. Moreover, while the facts of each case will require a jury to determine whether an individual has, in fact, “knowingly received” obscene matter, the need for such a determination by the jury does not suggest that a statute is too vague. A statute need not spell out every possible factual scenario with “ ‘celestial precision’ ” to avoid being struck down on vagueness grounds. See Vernon Beigay, Inc. v. Traxler, 790 F.2d 1088, 1093 (4th Cir.1986) (quoting Hart Book Stores, Inc. v. Edmisten, 612 F.2d 821, 833 (4th Cir.1979)).
We conclude that the ordinary meaning of the term “receives” is sufficiently precise in § 1462 to provide adequate notice to a person of ordinary intelligence of the conduct that Congress has prohibited.
rv
In addition to his facial challenges to 18 U.S.C. § 1462, Whorley contends that the statute is unconstitutional as applied to the facts underlying Counts 1-20 (charging him with receiving obscene cartoons) and Counts 56-75 (charging him with receiving obscene e-mails), because he did not know that cartoons and text-only e-mails lacked the protection of the First Amendment.
With respect to his argument on Counts 1-20, he states:
The statute is unconstitutional as applied to these counts for the same reasons discussed above.... Moreover, [Whorley] had no notice that viewing the cartoon images on the computer screen was unlawful.... Indeed, according to the government’s own witnesses, prior to March 2004, [Whorley] had used the [Virginia Employment Commission] computer room (which sometimes was monitored by a [Virginia Employment Commission] employee) to access pornographic web-sites on several occasions, all without incident.
To the extent that this challenge parallels Whorley’s facial challenges, it fails for the same reasons they did. Thus, whatever *335 protection Stanley may have afforded to the possession of obscene matter in the privacy of the home, it cannot be said to have created a right to “receive” obscene materials using instruments of commerce. And to the extent that this challenge is based on Whorley^ ignorance of the law or his belief that his similar conduct in the past should somehow provide him a defense, the claim is frivolous. See Cheek v. United States, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) (“The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system”).
Whorley makes an as-applied challenge also with respect to Counts 56-75 on the basis that e-mails are only textual and therefore cannot be obscene. He argues:
It is undisputed that the e-mails for which [Whorley] was convicted were pure speech; that is, they did not include any obscene visual depictions, nor were they accompanied by attachments containing obscene material. For this reason, even the district court found the government’s allegations in Counts 56 through 75 troubling.
In essence, Whorley argues that text, standing alone, may not constitutionally be prohibited as obscene. He never explains why, however, nor does he cite any authority for his argument. Indeed, he overlooks the traditional formulations of obscenity, which have never depended on the form or medium of expression.
In Miller v. California, 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the Court defined obscenity in the context of “works,” which “taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.” And in Kaplan v. California, 413 U.S. 115, 119, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973), which was decided the same day as Miller, the Court made clear that “works” include both pictorial representations and words:
Obscenity can, of course, manifest itself in conduct, in the pictorial representation of conduct, or in the written and oral description of conduct. The Court has applied similarly conceived First Amendment standards to moving pictures, to photographs, and to words in books.
The Court there affirmed the conviction of a book store proprietor who sold a book made up “entirely of repetitive descriptions of physical, sexual conduct, ‘clinically’ explicit and offensive to the point of being nauseous[, with] only the most tenuous ‘plot.’ Almost every conceivable variety of sexual contact, homosexual and heterosexual, [was] described.” Id. at 116-117, 93 S.Ct. 2680.
Accordingly, Whorley’s arguments that 18 U.S.C. § 1462 is unconstitutional as applied to the cartoons and e-mails charged in Counts 1-20 and Counts 56-75 are readily rejected.
V
Whorley next contends that 18 U.S.C. § 1466A(a)(l) is unconstitutional as applied to the cartoon drawings that formed the basis for the charges in Counts 21-40 because cartoon figures are not depictions of actual people. He argues that § 1466A(a)(l) necessarily requires that the visual depictions be of actual minors and that if the depiction of an actual minor is not required, then § 1466A(a)(l) would be unconstitutional on its face under New York v. Ferber, 458 U.S. 747, 773-74, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (upholding state statute that prohibited depictions of actual children engaged in sexual con *336 duct, regardless of whether the depictions are obscene), and Ashcroft v. Free Speech Coalition, 535 U.S. 234, 241, 246-47, 249-51, 254-56, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) (holding that a statutory provision prohibiting any visual depiction that “is, or appears to be, of a minor engaging in sexually explicit conduct” violated the First Amendment insofar as it prohibited virtual imagery of minors that was neither obscene nor involved actual children). To make his argument, Whorley points out that subsection (a)(1) (prohibiting depictions of “a minor engaging in sexually explicit conduct”) is mirrored in subsection (a)(2) (prohibiting “an image that is, or appears to be, of a minor”). See 18 U.S.C. § 1466A(a)(l), (a)(2). He argues that the “appears to be” language in subsection (a)(2) indicates reference to a real minor in subsection (a)(1). In addition, he contends that subsection (a)(1) prohibits material depicting “sexually explicit conduct,” which is defined in 18 U.S.C. § 2256 as referring to real people. Section 2256 defines “sexually explicit conduct” in part as actual or simulated sexual intercourse, “whether between persons of the same or opposite sex.” 18 U.S.C. § 2256(2)(A) (emphasis added).
In making his argument, however, Whorley focuses too narrowly on isolated portions of § 1466A(a)(l). While § 1466A(a)(l) would clearly prohibit an obscene photographic depiction of an actual minor engaging in sexually explicit conduct, it also criminalizes receipt of “a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting,” that “depicts a minor engaging in sexually explicit conduct” and is obscene. Id. § 1466A(a)(l) (emphasis added). In addition, Whorley overlooks § 1466A(c), which unambiguously states that “[i]t is not a required element of any offense under this section that the minor depicted actually exist.” 18 U.S.C. § 1466A(c). The clear language of § 1466A(a)(l) and § 1466A(c) is sufficiently broad to prohibit receipt of obscene cartoons, as charged in Counts 21-40.[1]
This leaves Whorley with the argument that if an actual minor is not required to be depicted in § 1466A(a)(l), then the statute is unconstitutional under New York v. Ferber and Ashcroft v. Free Speech Coalition. There is, of course, no suggestion that the cartoons in this case depict actual children; they were cartoons. Relying specifically on Ashcroft v. Free Speech Coalition, Whorley points to the observation made in that opinion that the First Amendment does not protect “defamation, incitement, obscenity, and pornography produced with real children>” but that a ban on non-obscene material that did not use real children was impermissibly over-broad. Ashcroft, 535 U.S. at 245-46, 122 S.Ct. 1389 (emphasis added). The Court in Ashcroft noted further that New York v. *337 Ferber “provide® no support for a statute that eliminates the distinction [between actual and virtual child pornography].” Id. at 251, 122 S.Ct. 1389. Thus, he asserts that the First Amendment protects non-obscene pornography that does not depict real children.
But in making his argument, Whorley ignores the language of § 1466A(a)(l), which prohibits visual depictions of minors only when they are obscene. See 18 U.S.C. § 1466A(a)(l)(B). Ashcroft itself noted that obscenity in any form is not protected by the First Amendment. See Ashcroft, 535 U.S. at 245-46, 122 S.Ct. 1389; see also Miller, 413 U.S. at 24, 93 S.Ct. 2607; Kaplan, 413 U.S. at 119, 93 S.Ct. 2680. Thus, regardless of whether § 1466A(a)(l) requires an actual minor, it is nonetheless a valid restriction on obscene speech under Miller, not a restriction on non-obscene pornography of the type permitted by Ferber. We thus find Whorley’s as-applied constitutional challenge to § 1466A(a)(l) to be without merit.[2]
VI
In addition to his constitutional arguments, Whorley challenges numerous procedural rulings of the district court. None, however, requires extensive discussion.
A
First, Whorley contends for the first time on appeal that the e-mails that formed the basis of Counts 56-75, which were provided by YAHOO! in response to a government subpoena, were obtained in violation of his Fourth Amendment right against unreasonable searches. We conclude, however, that Whorley has waived the right to assert this objection by failing to object to the search before trial. See Fed.R.Crim.P. 12(b)(3)(C); id. 12(c); United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir.1997); United States v. Ricco, 52 F.3d 58, 62 (4th Cir.1995).
B
Whorley next contends that the district court abused its discretion in admitting, over his objection, evidence of his prior conviction for child pornography and the terms of his probation, which prohibited him from possessing pornography. The evidence was introduced in the form of the following stipulation:
On July 23, 1999, Dwight Edwin Whor-ley was convicted of receiving child pornography. On July 24, 2002, the defendant, Dwight Edwin Whorley, was instructed by a probation officer, David Guertler, that the defendant shall not possess, view, and/or have access to any pornographic materials, pictures displaying nudity, or any magazines using young juvenile models or pictures of juvenile models, as directed by the probation officer.
Whorley contends that the stipulation was improper character evidence because it was not necessary to prove any element of the charged offense. He argues: “Neither his knowledge nor intent were in issue. In fact, [Whorley] informed the court, he planned to concede at trial that he knowingly entered the web site.” Whorley argues further that it should have been excluded “because the danger of causing undue prejudice far outweighed any potential probative value.” See Fed. R.Evid. 403.
*338 First, insofar as the stipulation includes evidence of Whorley’s prior conviction, it was arguably relevant to the charges in Counts 21 40 and 42-55, where the government charged that Whorley had previously been convicted for violations of 18 U.S.C. § 2252 to justify enhanced sentences for violations of §§ 1466A(a)(l) and 2252(a)(2).
In addition, Federal Rule of Evidence 404(b) allows the admission of such evidence to prove “motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” Fed.R.Evid. 404(b); see also United States v. Queen, 132 F.3d 991, 994 (4th Cir.1997). The government introduced the evidence of Whorley’s prior conviction and terms of probation to establish that Whorley received the charged images knowingly, not by accident or mistake, while surfing the Internet and that he had knowledge that the individuals depicted in Counts 41-55 were minors. Moreover, the record contradicts Whorley’s assertion that these issues were not genuinely in dispute. Although Whorley was willing to stipulate that he knowingly entered the websites containing the charged images, he was not willing to concede that he knowingly received the charged images themselves or that he knew that the individuals in the images charged in Counts 41-55 were minors. The stipulation was probative on these disputed elements of the offenses.
Further, the district court made clear that it had weighed the danger of unfair prejudice inherent in introducing Whor-ley’s past conduct. Indeed, for that precise reason, the court did in fact exclude certain other prior bad acts evidence. But with respect to the stipulation, the court found that the risk of unfair prejudice was outweighed by the probative value of the evidence. And to reduce the risk of prejudice, the court gave the jury a limiting instruction. See Queen, 132 F.3d at 997.
In these circumstances, we conclude that the district court did not abuse its discretion in admitting the evidence.
C
Whorley also contends that the district court erred by failing to provide the jury with a particular instruction that he requested, elaborating on Miller’s, requirement that both the prurient appeal and the literary, artistic, political, or scientific value of the allegedly obscene item be evaluated as to the work “as a whole.” Miller, 413 U.S. at 24, 93 S.Ct. 2607. We have examined the district court’s charge to the jury concerning obscenity, including its complete and detailed instructions concerning each element of the Miller obscenity standard, and find that the court did not abuse its discretion by refusing to provide Whorley’s additional instruction. See United States v. Lewis, 53 F.3d 29, 32 (4th Cir.1995).
D
Whorley next contends that the government failed to produce evidence sufficient to allow a rational jury to find Whorley guilty beyond a reasonable doubt. In reviewing the sufficiency of the evidence, “our role is limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support the conviction.” United States v. Kelly, 510 F.3d 433, 440 (4th Cir.2007) (internal quotation marks omitted). “[Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant’s guilt beyond a reasonable doubt.” United States v. Burgos, 94 F.3d 849, 862 (4th Cir.1996) (en banc). Whorley’s sufficiency arguments are based largely on his interpretations of *339 18 U.S.C. §§ 1462 and 1466A, which we have rejected above. Having carefully considered the trial record in light of his arguments, we find that each of the offenses for which Whorley was convicted was adequately supported by the evidence before the jury.
E
On a collateral issue, Whorley contends that the district judge, who in 1986 chaired the Federal Attorney General’s Commission on Pornography while serving as a Commonwealth’s Attorney for Virginia, abused his discretion in denying Whorley’s motion that the judge recuse himself. The district judge denied the motion as untimely.
During arraignment, the district judge advised counsel that he had chaired the Commission and requested notice of whether recusal on that basis would be sought. Whorley’s counsel subsequently notified the court that Whorley did not intend to request recusal. But then, on the last business day before trial, some seven months after Whorley’s arraignment, Whorley filed the motion to recuse. Whorley explained that he had only become aware on the day before trial that the district judge had been involved in recommending and drafting child pornography legislation.
We review the district judge’s decision to deny a recusal motion for abuse of discretion. United States v. DeTemple, 162 F.3d 279, 283 (4th Cir.1998). In this case we find no abuse of discretion in the judge’s denial of Whorley’s motion as untimely filed, as “[t]imeliness is an essential element of a recusal motion.” United States v. Owens, 902 F.2d 1154, 1155 (4th Cir.1990). To prevent inefficiency and delay, “motions to recuse must be filed at the first opportunity after discovery of the facts tending to prove disqualification.” Sine v. Local No. 992 Int’l Bhd. of Teamsters, 882 F.2d 913, 915 (4th Cir.1989).
The facts underlying Whorley’s motion were available to him as a matter of public record at the time of his arraignment, and he has shown no cause excusing his failure to seek recusal before the eve of trial. By then, the court and the parties had invested substantial time and effort in litigating the complex pretrial questions that Whor-ley raised, particularly his claims that the statutes involved were unconstitutional. Whorley’s lack of diligence in determining whether the Commission on Pornography’s work included child pornography does not excuse his last-minute motion, especially after he argued the complex constitutional issues in the case and the court decided them. We find no abuse of discretion in the court’s denying that motion.
VII
Finally, Whorley contends that the district court abused its discretion by departing upward to impose a sentence of 240 months’ imprisonment. He argues that the district court acted unreasonably in imposing a sentence nearly 250% greater than that specified by the advisory Sentencing Guidelines because this case does not present “any circumstance that either is atypical or was not already taken into account by the sentencing guidelines.” He maintains: (1) that even though the cartoon images involved in this case depicted children engaging in sexually explicit conduct with adults, they “were simply drawings ... representing] the fictional work of an artist, not a factual recording of sexual exploitation of a child”; (2) that the pictures of naked minors involved in this case did not show any of them “touching themselves, each other, or an adult”; and (3) that most of the obscene e-mails involved in this case were written to Whor- *340 ley by another consenting adult, and only one was written and sent by Whorley. In short, Whorley contends that his offenses “can be only described as substantially below the seriousness ordinarily involved in this kind of offense.”
At the outset, we should correct Whor-ley’s premise that the upward departure represented a “nearly 250%” increase over that specified by the Sentencing Guidelines. While an interim calculation for Whorley’s conduct did yield a sentencing range of 87 to 109 months’ imprisonment, Whorley overlooked the fact that under the Guidelines, the final calculation must be adjusted upward when a statutory minimum sentence is greater, so that “the statutorily required minimum sentence shall be the guideline sentence.” U.S.S.G. § 5Gl.l(b). In this case, the mandatory minimum sentence for each of Counts 21-40 and 42-55 was 180 months’ imprisonment, and the maximum for each of those counts was 480 months’ imprisonment. See 18 U.S.C. §§ 1466A(a), 2252A(b)(l). Thus, the 240-month sentence imposed by the district court was an increase of 33% above the Guideline sentence of 180 months’ imprisonment.
Also, the record shows that Whorley’s conduct, as relevant to sentencing, did indeed present circumstances that were atypical and not taken into account by the Sentencing Guidelines. The facts relied on by Whorley to challenge the seriousness of his offense — that cartoons, not real persons, were involved; that there was no touching in photographs; and that Whor-ley received, rather than sent, most of the obscene e-mails — are statutorily irrelevant. His challenge on those bases is, in effect, a challenge to Congress’ policies in defining the offenses for which he was convicted.
Whorley was first arrested in December 1998 for receiving and distributing visual depictions of minors engaging in sexually explicit conduct. Over the period of several weeks, Whorley had been receiving and sending pictures, using computers at the Virginia Commonwealth University, that depicted 9 or 10-year-old females having sexual intercourse and performing other sexual acts with males approximately 25 to 30 years old. Upon his arrest, police seized extensive amounts of child pornography, as well as books related to child abuse prevention, incest, and children killing or being killed, including horror stories of children’s deaths; medical evaluations of preteen patients; and e-mails related to child pornography. Whorley was sentenced to 46 months’ imprisonment.
Within months after his release in April 2002, Whorley was charged with violating the terms of his supervised released for viewing adult pornography at the Richmond Career Advancement Center. Six months later, Whorley was charged again with using a computer without the approval of his probation officer. And yet again, two months later, on March 14, 2003, Whorley was charged with violating the terms of his supervised release for his unauthorized use of a computer and falsely reporting his efforts to obtain employment. The court finally revoked his supervised release and again imprisoned him.
On January 29, 2004, Whorley was again released from prison, and within two weeks, he was receiving and distributing child pornography. From February to April 2004, Whorley received or distributed obscene matter and child pornography on 20 different days, for which he was indicted in this ease. The grand jury indicted him on 75 felony counts.
Psychological evaluations of Whorley performed in June 1999 and again in June 2002 found Whorley to meet the “formal DSM-IV criteria for the mental illness of Pedophilia.” During the course of these evaluations, Whorley stated and admitted *341 “that he ‘is scared’ of his sexual urges toward female children and his ‘potential of hurting a child,’ ” although he also expressed belief that he could control his sexual behavior. Another report of an evaluation performed in August 2002 indicated that Whorley “does appear to be at least at risk to continue to access and possess child pornography.”
After a jury convicted Whorley in this case on 74 felony counts, 33 of which included a minimum sentence of 15 years and a maximum sentence of 40 years’ imprisonment, the probation officer indicated that an upward departure from the 15-year recommended sentence “may be warranted based upon the defendant’s criminal history not adequately reflecting the seriousness of his past criminal conduct.” Also, the government filed a motion for an upward departure to a sentencing range of 262 to 327 months’ imprisonment.
Following an extensive sentencing hearing, the district court granted the government’s motion, but not in full. The court sentenced Whorley to 240 months’ imprisonment, a 33% increase over the 180-month sentence recommended by the Sentencing Guidelines. The court found that a number of circumstances took the case out of the heartland of the Guidelines sentence:
1. The defendant has engaged in a continuing course of prior similar conduct, much of which did not result in criminal convictions and is not reflected in his criminal history category.
2. Despite having twice been found in violation of the conditions of his supervised release and reincarcerated, this Defendant continues to virtually disregard the directions of the United States Probation Officer. The defendant has received at least five (5) notices of violation containing at least eighteen (18) instances of his failure to obey the conditions of supervised release. These violations include continuing to access computers without the probation officer’s approval, numerous false statements concerning attempts to obtain employment, failure to obtain employment, failure to report to the Department of Rehabilitation Services, failure to report to the Offender Aid and Restoration Program, and most disturbingly, his presence at local malls and public libraries frequented by children in direct disobedience of his probation officer’s instructions.
3. The defendant has derived no benefit from previous rehabilitative programs. He has failed to make a good faith effort to control his sexual deviance.
4. The volume of material recovered from the defendant demonstrates an escalating interest in prepubescent erotica.
5. The materials in Defendant’s possession appear to be increasing[ly] sadistic and violent in nature.
The court concluded that this history of Whorley’s conduct provided a picture of “a diagnosed pedophile who is resistant to any type of rehabilitation or behavioral correction.”
Applying the Sentencing Guidelines, the district court relied on two encouraged factors for upward departure: “[sjubstan-tial underrepresentation of criminal history and likelihood of continuing criminal conduct under U.S.S.G. 4A1.3[ (a)(1) ], and prior similar conduct not resulting in criminal conviction, under U.S.S.G. 4A1.3[ (a) ](2)(E).” The court also relied on Whorley’s background to conclude that the total offense level provided by the Guidelines did “not adequately account for the atypical circumstances in this case.”
*342 In addition to its analysis under the Sentencing Guidelines, the district court conducted an analysis under 18 U.S.C. § 3553(a), stating that it had considered
the nature and circumstances of the offense and the history and characteristics of the defendant, as required by Title 18 U.S.C. § 3553(a). The Court believes that a sentence within the 210 to 262 month range fulfills the congressionally established objectives for sentencing. In this case, not only would it provide just punishment for the offense, but would afford adequate deterrence and protect the public from further criminal activity from the defendant.
In short, the district court based its upward departure on (1) Whorley’s extensive history of downloading child pornography, which was not, except for his 1999 conviction, represented in the recommended Guidelines calculation; (2) his repeated disobedience of court orders attempting to regulate his deviant conduct; (3) his almost continuous pursuit of criminal conduct — -virtually without a break since 1998 — and its increasing risk to the public; and (4) his failure to show any progress in reforming his conduct. Even with the departure, however, Whorley’s 240-month sentence remains in the lower half of the statutory range of 180 to 480 months, the midpoint being 330 months.
The district court’s consideration of Whorley’s sentence in this case was thorough, and the sentence it imposed was amply supported by the facts and by legally appropriate considerations. In these circumstances, we cannot agree with Whorley that the district court abused its discretion and acted unreasonably.
In Gall v. United States, — U.S.-, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), the Supreme Court repeatedly instructed that appellate courts defer in these circumstances. With respect to a departure or variance sentence, such as before us, the Court stated:
[The appellate court] may consider the extent of the deviation, but must give due deference to the district court’s decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.
Gall, 128 S.Ct. at 597. Repeating these instructions, the Court stated:
But it is not for the Court of Appeals to decide de novo whether the justification for a variance is sufficient or the sentence reasonable. On abuse-of-discretion review, the Court of Appeals should have given due deference to the District Court’s reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence.
Id. at 602. See also United States v. Pauley, 511 F.3d 468, 473-74 (4th Cir.2007). In following these instructions, we have affirmed departures encompassing the range involved here. See, e.g., United States v. Evans, 526 F.3d 155, 161-66 (4th Cir.2008) (affirming a 316% upward variance); United States v. Curry, 523 F.3d 436, 439-41 (4th Cir.2008) (affirming a 13% downward departure); Pauley, 511 F.3d at 474-76 (affirming a 46% downward departure). In Evans, we noted, “We recognize that the sentence [constituting a 316% variance] imposed on Evans may not be the only reasonable sentence, but it is a reasonable sentence, and the Supreme Court [in Gall] has directed that any reasonable sentence be upheld.” 526 F.3d at 166.
In this case, we are presented with no procedural or substantive errors in the district court’s determination that the goals of federal sentencing were best *343 served by the 240-month sentence, and therefore we conclude that the sentence was not unreasonable.
The judgment of the district court is accordingly

AFFIRMED.

. Section 1466A, which was added to Title 18 by the PROTECT Act of 2003, Pub.L. No. 108-21, § 504, 117 Stat. 650, 680-82 (2003), criminalizes the possession, sale, distribution, and receipt of specific sexually explicit visual representations of minors. The relevant portions of the statute provide:
(a) In general. — Any person who ... knowingly ... receives ... a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that—
(1) (A) depicts a minor engaging in sexually explicit conduct; and
(B) is obscene;
shall be subject to the penalties provided in [18 U.S.C. § 2252A(b)(l) ], including the penalties provided for cases involving a pri- or conviction.
* * *
(c) Nonrequired element of offense. — It is not a required element of any offense under this section that the minor depicted actually exist.
18 U.S.C. § 1466A(a), (c).

. Whorley also challenges the constitutionality of 18 U.S.C. §§ 1466A(a)(2), (b)(1), and (b)(2). Because Whorley was not convicted of offenses under those provisions, we decline to address his challenges to them.