**PUBLISHED**

Filed: June 15, 2009

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DWIGHT EDWIN WHORLEY,

*Defendant-Appellant.*

No. 06-4288
(3:05-cr-00114-HEH)

## ORDER

Appellant has filed a petition for rehearing and rehearing en banc.

A member of the court requested a poll on the petition for rehearing en banc. Chief Judge Williams, Judge Wilkinson, Judge Niemeyer, Judge Michael, Judge Motz, Judge Traxler, Judge King, Judge Shedd, Judge Duncan, and Judge Agee voted to deny rehearing en banc, and Judge Gregory voted to grant rehearing.

The petition for rehearing is denied, and, because the poll on rehearing en banc failed to produce a majority of judges in active service in favor of rehearing en banc, the petition for rehearing en banc is also denied. Judge Niemeyer wrote an opinion supporting the denial of rehearing en banc, and Judge Gregory wrote an opinion dissenting from the denial of rehearing en banc.

For the Court

/s/ Patricia S. Connor
Clerk

NIEMEYER, Circuit Judge, supporting the denial of rehearing en banc:

My colleague's dissenting position rests on his belief that the First Amendment protects concededly obscene e-mails because the e-mails "implicated no commercial interest and, although the e-mails described fantasies about sexual conduct involving children, the children referred to were imagined, not real." Yet, if we accept, as we must, the proposition that expression, regardless of its form, is protected by the First Amendment, we must likewise recognize the proposition that obscenity in any of those forms is not protected and may be regulated by the state. *See Miller v. California*, 413 U.S. 15, 24 (1973); *Kaplan v. California*, 413 U.S. 115, 119 (1973) ("Obscenity can, of course, manifest itself in conduct, in the pictorial representation of conduct, or in the written and oral description of conduct").

Despite my good colleague's misgivings, Whorley violated criminal statutes regulating obscenity, and his convictions may not be forgiven because his conduct was prompted by his sexual fantasies. Accordingly, we appropriately deny his motion for a rehearing en banc.

GREGORY, Circuit Judge, dissenting from the denial of rehearing en banc:

Dwight Whorley was convicted on twenty counts of violating 18 U.S.C. § 1462[1] for communicating by e-mail with con-

---

[1]Section 1462 criminalizes the import or transportation of "any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character" in interstate commerce.

senting adults about their personal and private fantasies. The offending e-mails were purely textual and did not include any images. They implicated no commercial interest and, although the e-mails described fantasies about sexual conduct involving children, the children referred to were imagined, not real. It is undisputed that the e-mails did not involve any victimization or exploitation of actual children. Nonetheless, the panel majority rejected Whorley's as-applied challenge to his conviction under 18 U.S.C. § 1462 because the e-mails were found by a jury to be obscene.

This is a difficult case. The e-mails were admittedly transmitted and received through channels of interstate commerce and were found by a jury to be obscene under the obscenity test laid out in *Miller v. California*, 413 U.S. 15, 24 (1973). One might say that this absolves us of the need to look any further into the potential constitutional harms inflicted by the application of 18 U.S.C. § 1462 to Whorley's conduct.[2] Haven't we long said, after all, that the First Amendment does not protect obscenity? *See id.* at 23. Yet, "First Amendment freedoms are *most in danger* when the government seeks to control thought or to justify its laws for that impermissible end." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002) (emphasis added). I am hard-pressed to think of a better modern day example of government regulation of private thoughts than what we have before us in this case: convicting a man for the victimless "crime" of privately communicating his personal fantasies to other consenting adults.

---

[2]The only argument raised on appeal regarding these e-mails was that, as textual speech, the e-mails could not be obscene. The panel majority correctly pointed out that words can be obscene under the *Miller* test. *United States v. Whorley*, 550 F.3d 326, 335 (4th Cir. 2008). Nonetheless, I believe we are obligated to review for plain error whether the district court should have dismissed these charges because of the significant implications of the majority's decision for the First Amendment. *See id.* at 347-48 (Gregory, J., dissenting).

In *Stanley v. Georgia*, 394 U.S. 557 (1969), the Supreme Court extended First Amendment protections to the possession of obscene materials in the privacy of one's home. Since then, our obscenity jurisprudence has not allowed *Stanley* to reach much beyond its facts. As the panel opinion notes, the Supreme Court "has repeatedly rejected the notion . . . that as a matter of logic, because the First Amendment prohibits the criminalization of private possession of obscene materials within the home, there exists a correlative 'right to receive' obscene materials." *United States v. Whorley*, 550 F.3d 326, 332 (4th Cir. 2008). Yet, I am aware of no case that, in limiting *Stanley*, deals with circumstances like this where the sending or receiving of the obscene materials involves neither a commercial transaction nor any kind of victim. In fact, I have difficulty seeing what interest the government could possibly have in regulating this particular conduct of Whorley's other than some sort of "indirect harm" theory of the type rejected by the Supreme Court in *Free Speech Coalition*, 535 U.S. 234.

In that case, the Court considered the constitutionality of a definition of "child pornography" in the Child Pornography Prevention Act of 1996 that would have covered "a range of depictions, sometimes called 'virtual child pornography,' which include computer-generated images, as well as images produced by more traditional means." *Id.* at 241. Noting the clear state interest in prohibiting the production or distribution of images that "are themselves the product of child sexual abuse," *id.* at 249, the Court could identify no similar interest in regulating "virtual child pornography" since it "creates no victims by its production," *id.* at 250. The Court then rejected the Government's claim that this kind of pornography can indirectly cause harm by creating "some unquantified potential for subsequent criminal acts." *Id.* The Court found that "[t]he mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it. . . . [because] [t]he government 'cannot constitutionally premise legislation on the

desirability of controlling a person's private thoughts.'" *Id.* at 253 (quoting *Stanley*, 394 U.S. at 566).

Similarly, here, I see no interest in regulating the sending of private e-mail fantasies about imaginary children beyond the perceived desirability of censoring these kinds of thoughts. *Free Speech Coalition* makes clear that the First Amendment protects against this kind of censorship premised on speculative and indirect theories of harm.

One might argue that this case is distinguishable from *Free Speech Coalition* because here we are dealing with material that has been found obscene and thus is not entitled to any First Amendment protections to begin with. But, as the Supreme Court recognized in *Stanley*, while "the First and Fourteenth Amendments recognize a valid governmental interest in dealing with the problem of obscenity[,]. . . . the assertion of that interest, cannot, in every context, be insulated from all constitutional protections." 394 U.S. at 563. *Free Speech Coalition* and *Stanley*, taken together, stand for the proposition that when the government's only interest in regulating obscenity is to protect people from their own thoughts or to censor thoughts that have an unquantifiable potential to induce future bad acts, the First Amendment shelters individuals from this kind of state intrusion on their personal privacy. "Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds." *Stanley*, 394 U.S. at 565; *cf. United States v. Reidel*, 402 U.S. 351, 356 (1971) (suggesting in reversing dismissal of indictment for mailing obscene circulars that the case might be different if defendant had "complaints about governmental violations of his private thoughts or fantasies").

The Supreme Court has long recognized that "constitutionally protected expression . . . is often separated from obscenity only by a dim and uncertain line" and thus we must be careful that "regulations of obscenity scrupulously embody the most rigorous procedural safeguards." *Bantam Books, Inc.*

*v. Sullivan*, 372 U.S. 58, 66 (1963) (citations omitted). Where the state has a legitimate interest in regulating obscene materials—for example, where those materials are being commercially traded and/or where those materials are the product of the abuse or exploitation of their subjects—the First Amendment's protections may not apply. But where the only articulable interest in regulation is a fear of the expression of certain kinds of thoughts, even obscenity must be given a constitutional safe harbor. "*Stanley* rests on the proposition that freedom from governmental manipulation of the content of a man's mind necessitates a ban on punishment for the mere possession of the memorabilia of a man's thoughts and dreams, unless that punishment can be related to a state interest of a stronger nature than the simple desire to proscribe obscenity as such." *Reidel*, 402 U.S. at 359 (Harlan, J., concurring).

In today's world, our e-mail inbox, just as much as our home, has become the place where we store the "memorabilia of [our] thoughts and dreams," *id.*, and the same principles that animated *Stanley* call now for *Stanley*'s extension to the circumstances of this case. A failure to recognize *Stanley*'s applicability to non-commercial, private e-mail communications in which the government has no legitimate interest dangerously restricts the use of today's dominant medium for exercising freedom of speech.

The Supreme Court's obscenity jurisprudence has never come close to stripping adults of First Amendment protections for their purely private fantasies, and the implications of our sanctioning this kind of governmental intrusion into individual freedom of thought are incredibly worrisome. This is an important and difficult case, and one that I strongly believe merits rehearing by this court sitting en banc. My colleagues apparently disagree, and I therefore urge the Appellant to seek certiorari from the Supreme Court.[3]

---

[3]Whorley has also raised an as-applied challenge to 18 U.S.C. § 1466A(a)(1), which he argues prohibits only visual depictions of actual

minors. I agree and believe this is also an important issue for further consideration if not by this Court sitting en banc then by the Supreme Court. A straightforward reading of the statute shows that it prohibits images that "depict[ ] *a minor* engaging in sexually explicit conduct." 18 U.S.C. § 1466A(a)(1)(A) (emphasis added). A minor is typically understood to be a "*person* under the age of eighteen years." 18 U.S.C. § 2256 (emphasis added). Images of purely imagined children are not depictions of a minor person such that the prohibitions of § 1466(A)(a)(1) would apply. *See Whorley*, 550 F.3d at 351 (Gregory, J., dissenting). This interpretation of the statute is further bolstered by the fact that an interpretation that found § 1466A(a)(1) applied to depictions of both real and imagined children would render § 1466A(a)(2) superfluous. *See id.* at 351-52.