UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-5261

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LOREN JAY ADAMS,

Defendant - Appellant.

Appeal from the United States District Court for the Northern
District of West Virginia, at Martinsburg. John Preston Bailey,
Chief District Judge. (3:08-cr-00028-JPB-DJJ-1)

Submitted: July 7, 2009          Decided: July 24, 2009

Before MICHAEL and DUNCAN, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

Brian J. Kornbrath, Federal Public Defender, Clarksburg, West
Virginia, for Appellant.  Erin Reisenweber, Assistant United
States Attorney, Martinsburg, West Virginia; Pamela S.
Satterfield, Obscenity Prosecution Task Force, John-Alex Romano,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Loren Adams was convicted of three counts of transportation of obscene matter by United States mail, in violation of 18 U.S.C. § 1461 (2006), and three counts of transportation of obscene matter for sale or distribution, in violation of 18 U.S.C. § 1465 (2006). He received a sentence of thirty-three months' imprisonment.

On appeal, Adams first contends that he is entitled to a new trial, as the jury failed to consider the charged material "as a whole," as required by Miller v. California, 413 U.S. 15 (1973). Therefore, according to Adams, the Government failed to meet its burden of proof that the videos, taken as a whole, appealed to the prurient interest and lacked serious literary, artistic, political, or scientific value. Second, Adams contends that the judge abused his discretion in refusing to allow Adams to call a witness to testify as to the online availability of materials substantially identical to those charged in the offense.

I.    Sufficiency of Evidence

Adams first challenges the sufficiency of the evidence, arguing that the Government failed to satisfy its burden of proving that the charged materials, taken as a whole, were obscene. When reviewing the sufficiency of the evidence,

this court's "role is limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support the conviction." United States v. Whorley, 550 F.3d 326, 338 (4th Cir. 2008) (internal quotation marks and citations omitted). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). We do not review the credibility of witnesses and assume the jury resolved all contradictions in the testimony in favor of the Government. United States v. Harvey, 532 F.3d 326, 333 (4th Cir. 2008).

Obscene material does not enjoy the protection of the First Amendment. Miller v. California, 413 U.S. 15, 23 (1973). In order to demonstrate that relevant material is obscene, the Government must prove that (1) "the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest;" (2) "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law;" and (3) "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." Id. at 24 (internal quotation marks and citations omitted).

3

Here, the evidence before the jury was more than sufficient to support a finding of guilt beyond a reasonable doubt, despite the jury's failure to view the films in their entirety. The Government introduced the complete movies into evidence, and played a representative portion of each video in open court. The representative portions of both "Doggie3Some" and "Anal Doggie and Horse" depicted women engaging in sexual acts with dogs and a horse, and the representative portion of the third film, "Fisting 1," depicted women being penetrated by large objects. The federal agent responsible for ordering the movies from Adams testified as to the contents of the remainder of the films. The agent testified that he had viewed each movie in its entirety, summarized the remainder of the films for the jury, and stated that the unplayed portion of each showed sexual acts similar to those contained in the excerpts. Bradley also read aloud Adam's website's descriptions of the films to the jury, and testified that the descriptions accurately detailed the content of each movie. Accordingly, we find that the Government presented evidence sufficient to support the jury's conclusions that, taken as a whole, the films appealed to prurient sexual interests and lacked serious literary, artistic, political, or scientific value.

Moreover, Adams never contended, and does not now assert, that the portions played in court were not

4

representative of the videos in their entirety, or that the films had any serious value, whether literary, artistic, political, or scientific. Similarly, Adams never requested that the jury watch the films in their entirety, and does not now contend that, had the jurors watched the entirety of each film, they would have reached a different conclusion. Therefore, because it is clear "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," Neder v. United States, 527 U.S. 1, 15 (1999) (internal quotation marks and citations omitted), any error in the jury's failure to view the films in their entirety is harmless.

## II. Exclusion of Evidence

Adams next asserts that the district court erred in refusing to allow him to introduce evidence demonstrating that materials substantially similar to the charged films were accessible in Martinsburg through the internet. Specifically, Adams intended to call a computer systems administrator who would testify that, by entering the terms "fisting" and "bestiality" into search engines, he found thousands of articles, movies, links, and photos devoted to these terms, which were available to anyone in the Martinsburg, West Virginia area with internet access.

5

We review a district court's evidentiary ruling on the exclusion of evidence for an abuse of discretion. <u>United States v. Fulks</u>, 454 F.3d 410, 434 (4th Cir. 2006). In a prosecution for obscenity, the jury must apply "contemporary community standards" when determining the "prurient interest" prong of the <u>Miller</u> test. 413 U.S. at 24. By introducing testimony of the availability of like materials on the internet, Adams sought to demonstrate that such materials were "accepted" in the Martinsburg community, and therefore did not appeal to the prurient sexual interest. However, "the availability of similar materials . . . [in] the community does not automatically make them admissible as tending to prove the nonobscenity of the materials which the defendant is charged with circulating." <u>Hamling v. United States</u>, 418 U.S. 87, 125 (1974). Instead, the "[m]ere availability of similar material by itself means nothing more than that other persons are engaged in similar activities." <u>Id.</u> at 126 (internal quotation marks and citation omitted).

In <u>United States v. Ragsdale</u>, 426 F.3d 765 (5th Cir. 2005), the defendant challenged the district court's exclusion of allegedly comparable materials available in the community. Citing <u>Hamling</u>, the Fifth Circuit upheld the ruling of the district court, finding it to be "well within the range of

6

allotted discretion afforded to the district court to exclude the evidence proffered by the defense." Id. at 776.

Similarly, in United States v. Pryba, we rejected a defendant's challenge to a jury instruction charging that contemporary community standards "are set by what is, in fact, accepted in the adult community as a whole, and not by what the community merely tolerates." 900 F.2d 748, 758 (4th Cir. 1990). In upholding the instructions, we found that

> To consider community toleration as synonymous with what a community will put up with skews the test of obscenity and invites one to consider deviations from community standards, because a community can be said to put up with a number of disagreeable circumstances that it cannot stop. The District of Columbia had over 350 murders in 1989, but to say that the citizens "tolerated" this epidemic of homicides would misuse the word.

Id. at 759. This reasoning demonstrates that the availability of certain materials in the fringe of a community is no indication of community acceptance of it. The conclusion follows that the district court acted within its discretion, and appropriately followed both Supreme Court and Circuit precedent, in finding that the testimony Adams wished to present regarding the accessibility of comparable materials online was not relevant to the determination of contemporary community standards.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and

7

legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED