Judge RYAN
delivered the opinion of the Court.
Contrary to his pleas, a military judge sitting as a general court-martial convicted Appellant of two specifications of knowingly possessing a total of 224 obscene visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 1466A(b)(l) (2006), incorporated by clause 3, Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006). Appellant was acquitted of an additional specification of wrongfully and knowingly possessing and viewing child pornography in violation of Article 134, UCMJ. The adjudged and approved sentence provided for a bad-conduct discharge, confinement for four months, forfeiture of all pay and allowances, and reduction to E-l.
The United States Army Court of Criminal Appeals (ACCA) reviewed the special findings of the military judge with respect to each depiction but affirmed the findings with respect to only 193 depictions, concluding that the remaining depictions either were not obscene or did not depict sexually explicit conduct and, therefore, were not factually sufficient to establish violations of § 1466A(b)(l). United States v. Bowersox, 71 M.J. 561, 563 (A.Ct.Crim.App.2012). The ACCA then reassessed and affirmed the approved sentence. Id. at 565.
We granted review of the following issue:
WHETHER APPELLANT’S CONVICTION OF VIOLATING 18 U.S.C. § 1466A(b)(l), AS IMPORTED THROUGH CLAUSE 3 OF ARTICLE 134, UCMJ, IS UNCONSTITUTIONAL AS APPLIED TO HIM BECAUSE THE MINORS DEPICTED IN THE MATERIAL AT ISSUE WERE NOT ACTUAL MINORS. SEE ASHCROFT v. FREE SPEECH COALITION, 535 U.S. 234[, 122 S.Ct. 1389, 152 L.Ed.2d 403] (2002); UNITED STATES v. WHORLEY, 550 F.3d 326 (4th Cir.2008).[1]
First, we hold that § 1466A(b)(l) applies to Appellant’s conduct because the statute expressly provides that the minors depicted need not actually exist. 18 U.S.C. § 1466A(c) (“It is not a required element of any offense under this section that the minor depicted actually exist.”). Second, § 1466A(b)(l) is constitutional as applied to Appellant because the statute requires that the proscribed visual depiction be obscene, 18 U.S.C. § 1466A(b)(l)(B) (“is obscene”), and the limited holding of Stanley v. Georgia, 394 U.S. 557, 568, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), which recognized an individual’s right to possess obscene materials “in the privacy of his own home,” does not extend to Appellant’s possession of obscene materials in his shared barracks room. For these reasons, the decision of the ACCA is affirmed.
I. FACTS
Appellant lived with Specialist (SPC) Andy Bryant in a shared military barracks room located on Fort Bragg, North Carolina. One day in early February 2009, after entering the shared barracks room, SPC Bryant observed Appellant abruptly stand up, and step in front of his computer, obscuring SPC Bryant’s view of the computer screen. SPC Bryant testified that he found Appellant’s behavior “odd.”
Shortly thereafter, Appellant asked SPC Bryant for the phone number of their superi- or, Sergeant (Sgt) Clark. When SPC Bryant asked Appellant why he wanted the phone number, Appellant said that he wanted to report a web site and asked SPC Bryant to come over and see the web site for himself. Appellant then showed SPC Bryant his computer screen, on which there were images of minors engaged in sexual activities. Appellant asked SPC Bryant if he should report the web site. SPC Bryant told Appellant to report the web site and left the room.
Approximately one week later, SPC Bryant asked Sgt Clark if Appellant had reported the web site; Appellant had not. After confronting Appellant, who feigned ignorance of the web site, SPC Bryant reported the incident to his first sergeant, who *73 immediately sent him to Criminal Investigation Command (CID) to make an official report.
Appellant’s shared barracks room was subject to inspection under Military Rule of Evidence (M.R.E.) 313(b), which authorizes “commanding officers to conduct inspections of their units — ‘as an incident of command’— when ‘the primary purpose ... is to determine and to ensure the security, military fitness, or good order and discipline of the unit,’ ” United States v. Jackson, 48 M.J. 292, 293 (C.A.A.F.1998) (alteration in original) (quoting M.R.E. 313(b)), and may include “‘an examination to locate and confiscate unlawful weapons and other contraband.’ ” Id. at 294 (quoting M.R.E. 313(b)). However, the “‘primary purpose’ of an inspection cannot be to ‘obtain[ ] evidence for use in a trial by court-martial.’” Id. (alteration in original) (quoting M.R.E. 313(b)). Therefore, pursuant to CID regulations, Special Agent (SA) Jeremy Kamphuis obtained a verbal authorization from a military magistrate to search Appellant’s room for computer electronic devices, and then obtained a warrant from the same magistrate the following day. During the authorized search, CID seized, among other things, Appellant’s desktop and laptop computers.
The computers were sent to SA Kirk Ellis, the Computer Crimes Coordinator for the 10th MP Battalion, who conducted a search of the computers’ hard drives. The search of the laptop computer’s hard drive uncovered approximately twenty-seven images depicting minors engaged in sexual activities. The search of the desktop computer’s hard drive uncovered approximately 318 images depicting minors engaged in sexual activities. None of the images found on Appellant’s computers depicted real children. In a sworn statement made to CID, Appellant admitted that he was “addict[ed] to Anime”[2] and, on multiple occasions, had viewed and downloaded anime images that depicted minors engaging in sexual activities.[3]
II. THE ACCA OPINION
As relevant to the granted issue, the ACCA held that 18 U.S.C. § 1466A(b)(l) is constitutional as applied to Appellant because “the circumstances of [Appellant’s case remove it from the circumscribed protections afforded in Stanley.” Bowersox, 71 M.J. at 564. The lower court observed that “‘[t]he threshold of a barracks/dormitory room does not provide the same sanctuary as the threshold of a private home.’ ” Id. (quoting United States v. Conklin, 63 M.J. 333, 337 (C.A.A.F.2006)). The ACCA therefore concluded that “[t]here is no constitutionally recognized right to possess” “obscene visual depictions of a minor engaging in sexually explicit conduct ... in a shared barracks room in the special maritime and territorial jurisdiction of the United States.”[4] Id.
*74 III. DISCUSSION
Appellant argues that § 1466A(b)(l) is unconstitutional as applied to him both because none of the images found on his computers were of real minors, and because the limited right to possess obscenity in the privacy of one’s own home, as recognized in Stanley, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542, extends to Appellant’s shared barracks room. We disagree.
A.
First, Appellant claims that the application of § 1466A(b)(l) to his case is unconstitutional because the statute requires that a real minor be depicted and no real minors were depicted in the images found on Appellant’s computers.
Under § 1466A(b)(l) and (d)(5), it is a criminal offense to “knowingly possess[],” “in the special maritime and territorial jurisdiction of the United States,” “a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that ... depicts a minor engaging in sexually explicit conduct!,] and ... is obscene.”[5] 18 U.S.C. § 1466A(b)(l), (d).
Contrary to Appellant’s argument, § 1466A(b)(l) does not require proof that the depictions represent “real” minors. First, and most importantly, § 1466A(c) expressly states, “[i]t is not a required element of any offense under this section that the minor depicted actually exist.” Despite the clarity of this language, Appellant contends that it does not mean what it says, but rather means that Congress intended subsection (e) to “re-liev[e] the Government from the burden of exhaustively searching the country to identify conclusively the children involved in the production of the child pornography.” Brief for Appellant at 9, United States v. Bowersox, No. 12-0398, 2012 WL 3789193 (C.A.A.F. Aug. 28, 2012) (quoting United States v. Whorley, 550 F.3d 326, 351 (4th Cir.2008) (Gregory, J., concurring in part and dissenting in part)).
Appellant’s argument fails for at least two reasons. First, Congress provided equally clear and alternative language for doing exactly what Appellant describes when it defined an “identifiable minor” in another section of that chapter — “[this definition] shall not be construed to require proof of the actual identity of the identifiable minor.” 18 U.S.C. § 2256(9)(B) (emphasis added). That is not the language Congress used in the statute before us. See United States v. Wilson, 66 M.J. 39, 45-46 (C.A.A.F.2008) (“ ‘[Where] Congress includes particular language in one section of a statute but omits it in another section ... it is generally presumed that Congress acts intentionally and purposely in the disparate ... exclusion.’ ”) (alteration in original) (quoting Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (internal quotation marks omitted)).
Second, even if the words that a minor need not “actually exist,” 18 U.S.C. § 1466A(c), are open to alternative interpretations, that they mean the depictions need not be of a real minor is further illustrated by the list of visual depictions prohibited under the statute, which specifically lists both drawings and cartoons. See 18 U.S.C. § 1466A(b). Moreover, visual depictions are themselves defined to include a “computer image or picture, or computer generated image or picture, whether made or produced by electronic, mechanical, or other means.” 18 U.S.C. § 1466A(f)(l). Neither drawings nor cartoons nor computer-generated images necessarily or logically require a real minor. In our view, the express reference to “computer image or picture, or computer generated image or picture,” and to drawings and cartoons, makes clear that the statute envisioned and made criminal the possession of precisely the type of depictions on which *75 Appellant’s conviction was based&emdash;obscene, computer-generated images of minors engaged in sexually explicit conduct.
In sum, we agree with the Fourth Circuit’s analysis of a related statutory subsection in United States v. Whorley:
While § 1466A(a)(l) would clearly prohibit an obscene photographic depiction of an actual minor engaging in sexually explicit conduct, it also criminalizes receipt of “a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting,” that “depicts a minor engaging in sexually explicit conduct” and is obscene. Id. § 1466A(a)(l) (emphasis added). In addition, Wfiiorley overlooks § 1466A(c), which unambiguously states that “[i]t is not a required element of any offense under this section that the minor depicted actually exist.” 18 U.S.C. § 1466A(c). The clear language of § 1466A(a)(l) and § 1466A(c) is sufficiently broad to prohibit receipt of obscene cartoons, as charged in Counts 21-40.
Whorley, 550 F.3d at 336.[6]
B.
Appellant also claims that § 1466A(b)(l) is unconstitutional as applied to him because he has the right to possess obscenity in the privacy of his shared barracks room.
The First Amendment states that “Congress shall make no law ... abridging the freedom of speech -” U.S. Const. amend. I. However, “obscene material is unprotected by the First Amendment.” Miller, 413 U.S. at 23, 93 S.Ct. 2607. Nonetheless, in Stanley, 394 U.S. at 568, 89 S.Ct. 1243, the Supreme Court held that a statute prohibiting the possession of obscene material "within the home was unconstitutional. In doing so, the Court stated that, “a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch.” Id. at 565, 89 S.Ct. 1243. The constitutional principle underlying the holding in Stanley is less than clear. Compare United States v. 12 200-Ft. Reels of Super 8mm. Film, 413 U.S. 123, 126, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973) (“Stanley depended, not on any First Amendment right to purchase or possess obscene materials, but on the right to privacy in the home.”), with Osborne v. Ohio, 495 U.S. 103, 108 n. 3, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (“We have since indicated that our decision in Stanley was ‘firmly grounded in the First Amendment.’ ”) (citation omitted). But no one disputes that: (1) obscenity itself is not protected speech under the First Amendment, see Miller, 413 U.S. at 23, 93 S.Ct. 2607; (2) Stanley’s protection was grounded in the paramount importance accorded in our society to the “privacy of a person’s own home,” Stanley, 394 U.S. at 564, 89 S.Ct. 1243 (emphasis added) (finding that “[the] right to receive information and ideas, regardless of their social worth ... takes on an added dimension”&emdash;“the [fundamental] right to be free ... from unwanted governmental intrusions into one’s privacy”&emdash;where the prosecution is for “mere possession of [obscene] matter in the privacy of a person’s own home”); and (3) Stanley has been strictly limited to its facts, see Osborne, 495 U.S. at 108, 110 S.Ct. 1691 (“Stanley was a narrow holding.”).
After Stanley, “the States retained] broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home.” Stanley, 394 U.S. at 568, 89 S.Ct. 1243. Because “[t]he Constitution extends special safeguards to the privacy of the home,” United States v. Orito, 413 U.S. 139, 142, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973), “Stanley should not be read too broadly,” Osborne, 495 U.S. at 108, 110 S.Ct. 1691. *76 “The Court has consistently rejected constitutional protection for obscene material outside the home.” Orito, 413 U.S. at 143, 93 S.Ct. 2674. Because the zone of privacy that Stanley protected does not extend beyond the home, id. at 141-43, 93 S.Ct. 2674, the issue is whether a shared barracks room is a “home.”[7]
While we agree with Judge Stucky that servicemembers have a reasonable expectation of privacy in a shared barracks room that protects them from unreasonable government intrusions, we do not agree that one’s privacy interest in a shared barracks room is coextensive with one’s privacy interest in their home, see United States v. McCarthy, 38 M.J. 398, 403 (C.M.A.1993) (“[T]he threshold of a barracks/dormitory room does not provide the same sanctuary as the threshold of a private home.”); a place where “[t]he Constitution extends special safeguards,” Orito, 413 U.S. at 142, 93 S.Ct. 2674. In discussing a servicemember’s reasonable expectation of privacy in a shared barracks room, the Court has acknowledged that:
[tjhere are substantial differences between [a barracks room and a private home]. Appellant was assigned his room; he did not choose it. Appellant was assigned his roommate; he did not choose him. Appellant could not cook in his room, have overnight guests, or have unaccompanied underage guests. Appellant knew that he was subject to inspection to a degree not contemplated in private homes.
McCarthy, 38 M.J. at 403. Thus, a soldier has less of an expectation of privacy in his shared barracks room than a civilian does in his home. See, e.g., id. at 401 (“ ‘The soldier cannot reasonably expect the Army barracks to be a sanctuary like his civilian home.’” (quoting Committee for GI Rights v. Callaway, 518 F.2d 466, 477 (D.C.Cir.1975))); see also Rule for Courts-Martial (R.C.M.) 302(e)(1), (2) (“apprehension[s] may be made at any place, except” at a “private dwelling,” the definition of which includes “single family houses, duplexes, and apartments,” on or off a military installation, but explicitly excludes “living areas in military barracks”); M.R.E. 313(b) (permitting inspection “of the whole or part of a unit ... as an incident of command ... to ensure the security, military fitness, or good order and discipline of the unit”).[8]
Here, the fact that Appellant purposefully exposed SPC Bryant to the obscene computer depictions in their shared barracks room highlights the divergent natures of a shared barracks room and a private home. See Stanley, 394 U.S. at 565, 89 S.Ct. 1243 (“If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch.”). The very nature of a shared barracks room increases the risk that obscene materials will be viewed by those who do not wish to view them. Cf. id. at 567, 89 S.Ct. 1243 (concluding that an individual’s private possession of obscene material in the home does not present the danger that “it might intrude upon the ... privacy of the general public”). The “natural tendency of material in the home being kept private,” Orito, 413 U.S. at 143, 93 S.Ct. 2674, is substantially diminished in a shared barracks room.
Moreover, while a servicemember has a reasonable expectation of privacy in the files kept on a personal, password-protected computer for purposes of the Fourth Amendment, see Conklin, 63 M.J. at 337 (finding the warrantless search of a servicemember’s computer illegal because “an individual sharing a two-person dormitory room has a reasonable expectation of privacy in the files kept on a personally owned computer”), that privacy interest is not congruent with the *77 discrete and special privacy interest in one s home recognized by Stanley and was, in this case, overcome by a lawful warrant authorizing a search for contraband based on probable cause. See United States v. Leedy, 65 M.J. 208, 214-17 (C.A.A.F.2007) (finding a search warrant that authorized a search of the appellant’s personal computer in his shared dormitory room for child pornography valid where it was based on probable cause); cf. Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 653 n. 15, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) (“[T]he law recognizes no right to possess [contraband].” (citing One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 699, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965))). Stanley has been limited to its facts, and we decline to extend its holding to a shared barracks room.[9] See 12 200-Ft. Reels of Super 8mm. Film, 413 U.S. at 127, 93 S.Ct. 2665 (observing that the holding in Stanley rests on an “explicitly narrow and precisely delineated privacy right,” and “reflects no more than what Mr. Justice Harlan characterized as the law’s solicitude to protect the privacies of the life within [the home]” (alteration in original) (internal quotation marks and citation omitted)).
IV. DECISION
The decision of the United States Army Court of Criminal Appeals is affirmed.

. United States v. Bowersox, 71 M.J. 362 (C.A.A.F.2012) (order granting review).

.While Appellant described the images as "an-ime” in a sworn statement to CID they are more accurately described as realistic computer animation. Anime is "a style of animation originating in Japan that is characterized by stark colorful graphics depicting vibrant characters in action-filled plots often with fantastic or futuristic themes.” Merriam-Webster's Collegiate Dictionary 49 (11th ed.2008). In contrast, the images at issue depict real-looking children and adults engaged in sexual conduct. The images are created with such realism that they show expressions of pain and pleasure on the child participants’ faces, the children's shadows on the ground, and even depict the leg hairs of the men engaging in sex with the children. While the record does not establish that these images portray real, living children, it does demonstrate that these images are far removed from the fanciful cartoon caricature commonly understood to be “anime.”

. In his statement, Appellant described various files on his computer. One file consisted of "six minors (less than 10 years of age) in a multiracial setting with one adult at the end, all engaged in sexual acts.” Other files consisted of: (1) "shotacon” images, which generally depict "two minor boys engaged in sexual activities,” (2) "straight shotacon” images, which generally depict "animated girls who are older than the boys engaged in sexual activities,” and (3) images of incest.

. The scope of 18 U.S.C. § 1466A is limited by subsection (b) to ”[a]ny person ... in a circumstance described in subsection (d).” 18 U.S.C. § 1466A(b). The "circumstance” listed in subsection (d), as relevant to Appellant, is that "the offense is committed in the special maritime and territorial jurisdiction of the United States or in any territory or possession of the United States.” 18 U.S.C. § 1466A(d)(5). Here, Appellant and SPC Bryant’s shared barracks room is in build *74 ing H-4812 on Fort Bragg, North Carolina. No one disputes that Appellant's shared barracks room is in the "special maritime and territorial jurisdiction of the United States.” See 18 U.S.C. § 7 (2006).

. A minor is "any person under the age of eighteen years.” 18 U.S.C. § 2256(1). “Sexually explicit conduct” includes actual or simulated sexual intercourse, sodomy, masturbation, bestiality, sadistic or masochistic abuse, or lewd public behavior. 18 U.S.C. § 2256(2)(A).

. We further agree with Whorley that Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), is inapposite. Whorley, 550 F.3d at 336. The statute at issue in Ashcroft was held to be constitutionally over-broad because it reached and proscribed speech that was neither child pornography under New York v. Ferber, 458 U.S. 747, 764-66, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), nor obscene under Miller v. California, 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Ashcroft, 535 U.S. at 240, 122 S.Ct. 1389. In contrast, § 1466A(b)(l) only prohibits depictions of minors engaging in sexually explicit conduct if the depictions are obscene. 18 U.S.C. § 1466A(b)(l)(A)-(B).

. Since the First Amendment's protections do not otherwise depend on whether one’s conduct occurred within the privacy of one’s home, we rely on our Fourth Amendment jurisprudence to determine whether a shared barracks room is a "home” for purposes of Stanley.

. Application of McCarthy and reference to R.C.M. 302(e) and M.R.E. 313, which all assist in discerning the scope of the Fourth Amendment's right of privacy in the military context, are appropriate here where we are confronted with the question whether the barracks is a home for purposes of Stanley. See Stanley, 394 U.S. at 564-65, 89 S.Ct. 1243.

. To be clear, that Appellant’s conduct occurred "in the special maritime and territorial jurisdiction of the United States” is relevant to our analysis only insofar as it satisfies 18 U.S.C. § 1466A(d)(5). Our conclusion that Appellant’s conduct is not protected is based on the determination that Stanley does not extend beyond the home, see Onto, 413 U.S. at 143, 93 S.Ct. 2674, and that the shared barracks room at issue in this case does not merit the protections of a home, for purposes of Stanley.