**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Technical Sergeant MELVIN E. STANTON, JR.**
**United States Air Force**

**ACM 38385**

**28 August 2014**

Sentence adjudged 28 May 2013 by GCM convened at Ellsworth Air Force Base, South Dakota. Military Judge: Christopher M. Schumann (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 24 months, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Isaac C. Kennen and Captain Lauren A. Shure.

Appellate Counsel for the United States: Lieutenant Colonel C. Taylor Smith; Major Daniel J. Breen; Major John M. Simms; and Gerald R. Bruce, Esquire.

Before

HECKER, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

HECKER, Senior Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of violating a lawful general order and wrongfully possessing and viewing child pornography, in violation of Articles 92 and 134, UCMJ, 10 U.S.C. §§ 892, 934. The military judge sentenced the appellant to a dishonorable discharge, confinement for 36 months, and reduction to E-1. Pursuant to a pretrial agreement, the convening

authority reduced the confinement to 24 months and approved the findings and the remainder of the sentence as adjudged.[1]

On appeal, the appellant argues two of the Article 134, UCMJ, specifications fail to state an offense because they contain disjunctive language and the appellant was found guilty in the disjunctive. Upon initial review of the record, this Court specified the following additional issue: whether the appellant's guilty pleas are provident where the military judge failed to advise the appellant that any image of what "appears to be a minor" must also be obscene.

We find the appellant is entitled to partial relief on this second issue. We therefore modify the findings by exception and affirm the modified findings and the sentence. Given our resolution of the specified issue, we do not reach the issue raised by the appellant.

*Background*

In September 2012, the appellant's wife found child pornography on a laptop computer the appellant left behind when he deployed to al Udeid Air Base, Qatar. After she contacted civilian law enforcement, an investigation was opened which ultimately led to a forensic examination of multiple computer media belonging to the appellant, including a laptop and an external hard drive he brought to al Udeid. Multiple pornographic images were found on the two laptops and the external hard drive, as well as two desktop computers belonging to the appellant.

During his guilty plea inquiry, the appellant admitted using file sharing programs to search for images and videos of minors engaging in sexual activity. The appellant entered search terms into the programs which then created a list of files that contained the search terms. The appellant selected files for downloading and the file sharing program automatically saved them into a "download" folder on his computer's hard drive. After viewing the files, the appellant saved some of them in different locations on his computer media and deleted others. He engaged in this activity on multiple occasions while stationed in South Dakota between May 2008 and 14 July 2012.

When he deployed to Qatar on 15 July 2012, the appellant brought an external hard drive and one of his laptops with him, knowing they contained part of his child pornography collection. While there, the appellant followed the same process to search for files depicting minors engaging in sexual activity and attempted to download several dozen such files onto his laptop.

---

[1] We note the convening authority was not advised about the military judge's recommendation that all automatic forfeitures of pay be paid to the appellant's dependents. Although this was error, we find no prejudice because the convening authority elected to defer and then waive all automatic forfeitures. *See* Rule for Courts-Martial 1106(d)(3)(B).

Based on his course of misconduct, the appellant was charged with three Article 134, UCMJ, specifications. The first specification alleged the appellant possessed and viewed "visual depictions of minors engaging in sexually explicit conduct" in South Dakota between 1 May 2008 and 11 January 2012. The second and third specifications alleged he possessed and viewed "visual depictions of minors, or what appears to be minors" in South Dakota between 12 January 2012 and 14 July 2012 and in al Udeid between 15 July 2012 and 11 October 2012, respectively. The appellant was also charged with violating a lawful general regulation by wrongfully introducing onto and possessing this type of material at al Udeid Air Base.

The appellant's course of misconduct in South Dakota was split into two specifications because "child pornography" became an enumerated Article 134, UCMJ, offense for conduct committed on or after 12 January 2012. *Manual for Courts-Martial*, *United States* (*MCM*), Part IV, ¶ 68b (2012 ed.) (enacted by Exec. Order No. 13593, 76 Fed. Reg. 78458 (Dec. 13, 2011)). The Government also charged the appellant under this new offense for his misconduct in al Udeid. For his misconduct in South Dakota prior to 12 January 2012, the appellant was charged under Article 134, UCMJ, Clauses 1 and 2. The military judge ultimately found the appellant guilty of all specifications as charged.

*Providence Inquiry for Specification 1*

After providing the appellant the elements of the specification which alleged he possessed and viewed "visual depictions of minors engaging in sexually explicit conduct" between 1 May 2008 and 11 January 2012 in South Dakota, the military judge advised him of certain legal definitions, including that "child" and "minor" in this context include "any person under the age of 18 years." The appellant admitted the "minors" and "persons" in the images he possessed and viewed during this time frame were "real people," "look[ed] like real people," and were not "created digitally." He also admitted these "minors" appeared "a lot younger than adults" and were engaged in sexually explicit conduct, which he described as "display[ing] genitalia, masturbation, oral sex, and intercourse."

After some confusion whether this specification also charged the appellant with possessing and viewing images of what "appears to be" minors, the military judge told the appellant his plea inquiry was "clear that the images that [he] possessed and viewed [between 1 May 2008 and 11 January 2012] were visual depictions of minors engaging in sexually explicit conduct" and not images that "appeared to be" of minors. The appellant and his counsel did not disagree.

*Providence Inquiry for Specification 2*

The second specification alleged the appellant possessed and viewed "visual depictions of minors, or what appears to be minors, engaging in sexually explicit conduct" between 12 January 2012 and 14 July 2012 in South Dakota. When referencing the elements, the military judge initially advised the appellant it covered only "visual depictions of minors," and did not mention the "appears to be" language. The appellant agreed that everything he had stated regarding Specification 1 also applied to this specification, including that the materials contained visual depictions of "minors."

The appellant responded "yes" when asked if he agreed and admitted he had wrongfully possessed and viewed "visual depictions of minors" between 12 January 2012 and 14 July 2012 in South Dakota. In his narrative explanation of his conduct, the appellant expanded that date range to also cover the time frame from Specification 1 and then described how he used the file sharing program to search for images of "child pornography." He said he believed the "visual depictions of minors" he downloaded depicted "minors" based on the file names, the appearance of the individuals, and that the "minors" were engaged in various types of sexually explicit conduct—namely "sexual intercourse, sodomy, masturbation, and or lascivious exhibition of the genitals or pubic area."

After trial counsel then pointed out the language of Specification 2 included the "appears to be minors" language, the appellant agreed with the judge that the images "either were minors or were images of what appeared to be minors engaging in sexually explicit conduct." Although the trial counsel stated his opinion that the stipulation and images made clear the Government is alleging the images are of actual minors, the trial judge ended the appellant's providency inquiry without specifically limiting it to only that subset of the specification.

*Providence Inquiry for Specification 3*

For the third specification, the military judge again advised the appellant the specification covered the possessing and viewing of "visual depictions of minors" at al Udeid Air Base, although the specification itself also used the language "what appears to be minors," and advised him that the same definitions applied that applied for the first two specifications. The appellant initially agreed the visual depictions were of "minors" and he could tell they were "minors" based on the depicted individuals' size and development. He also admitted the images he downloaded "displayed genitalia, masturbation, oral sex, and intercourse by these minors" and that the images were "produced in a way to excite sexual desire or lust."

The military judge then asked the appellant if he admitted to possessing and viewing "visual depictions of minors engaging in sexually explicit conduct." After the

appellant responded "yes," the military judge asked, "[A]nd that includes the 'or what appears to be minors' language as well?" And the appellant responded "yes."

The appellant began his narrative explanation of his conduct by saying he knowingly possessed and viewed at al Udeid Air Base "child pornography, to wit: visual depictions of minors, or what appears to be minors." He described arriving at al Udeid Air Base with his laptop and external hard drive which contained "approximately 736" depictions of "minors nude and/or engaged in sexual acts" that he had downloaded in South Dakota. After referring to the language found in the specification, the appellant then said he believed the images he brought from South Dakota "depict minors engaged in sexually explicit conduct" based on the filenames and the individuals' development and size. He further admitted these "minors" were engaged in sexually explicit conduct, including "sexual intercourse, sodomy, masturbation, and/or lascivious exhibition of the genitals or pubic area." The appellant also said he "attempted to download approximately 24 files [he] believed contained child pornography" while at al Udeid Air Base but did not provide any further details about the nature of those images.

*Law and Discussion*

We conclude the military judge abused his discretion by accepting the appellant's guilty plea to possession of visual depictions that "appear[] to be minors." In discussing this aspect of the specification, the military judge failed to advise the appellant that any such images must also be "obscene" in order to be criminally actionable under the enumerated child pornography offense found in Article 134, UCMJ. We also conclude, however, that the remainder of the two specifications can be affirmed.

"During a guilty plea inquiry the military judge is charged with determining whether there is an adequate basis in law and fact to support the plea before accepting it." *United States v. Inabinette*, 66 M.J. 320, 321-22 (C.A.A.F. 2008). "A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion." *Id.* at 322 (quoting *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996)) (internal quotation marks omitted). In order to ensure a provident plea, the military judge must accurately inform the appellant of "the nature of his offense and elicit from him a factual basis to support his plea." *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004).

"An essential aspect of informing [the a]ppellant of the nature of the offense is a correct definition of legal concepts. The judge's failure to do so may render the plea improvident." *Id.* However, "an error in advising an accused does not always render a guilty plea improvident. Where the record contains factual circumstances that objectively support the guilty plea to a more narrowly construed statute or legal principle, the guilty plea may be accepted." *Id.* (quoting *United States v. James*, 55 M.J. 297, 300 (C.A.A.F. 2001)) (internal quotation marks omitted). In order to prevail on appeal, the appellant "has the burden to demonstrate a substantial basis in law and fact for questioning the

guilty plea." *Id.* (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)) (internal quotation marks omitted). The "mere possibility" of a conflict between the accused's plea and statements or other evidence in the record is not a sufficient basis to overturn the trial results. *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996) (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)) (internal quotation marks omitted).

In Specifications 2 and 3, the appellant was charged with viewing and possessing child pornography in two locations, in violation of Article 134, UCMJ. This enumerated offense defines child pornography in a way that covers both actual and virtual child pornography—material that contains either "a visual depiction of an actual minor" or "an obscene visual depiction of a minor" engaging in sexually explicit conduct.[2] *MCM*, Part IV, ¶ 68b.c(1).[3] Under this offense, the maximum sentence includes ten years confinement, regardless of whether the child pornography is actual or virtual.

The dual definition is reflected in the instructions found in the Military Judges' Benchbook, which state:

> The definition of "child pornography" used below will depend upon the evidence presented. The first definition below should be given where actual minors are in issue. The second definition below should be given where the depictions do not involve the use of actual minors, or there is some question as to whether actual minors were used in the depictions. If appropriate, give both definitions.
>
> "Child pornography" means material that contains a visual depiction of an actual minor engaging in sexually explicit conduct.
>
> "Child pornography" (also) means material that contains an obscene visual depiction of a minor engaging in sexually explicit conduct. Such a depiction need not involve an actual minor, but instead only what appears to be a minor.

---

[2] This latter part of this bifurcated definition apparently acknowledges the Supreme Court's holding that virtual child pornography that is not obscene implicates the First Amendment and the protections afforded speech. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 251 (2002) ("[T]he distribution of descriptions or other depictions of sexual conduct, not otherwise obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retains First Amendment protection."); *United States v. Bowersox*, 72 M.J. 71, 75 n.6 (C.A.A.F. 2013) (stating that a statute that prohibits obscene depictions of minors engaging in sexually explicit conduct is not constitutionally overbroad).

[3] For charging purposes, the sample specification effectuates this dual definition through the language "a (photograph) . . . (digital image) (computer image) of a minor, or what appears to be a minor, engaging in sexually explicit conduct." *Manual for Courts-Martial, United States*, Part IV, ¶ 68b.f. (2012 ed.).

Department of the Army Pamphlet (D.A. Pam.) 27-9, *Military Judges' Benchbook*, ¶ 3–68b-1, Note 2 (12 June 2014, Unofficial Version 14.4).

The instructions go on to define "obscene" as follows:

"Obscene" means that the average person applying contemporary community standards would find that the visual images depicting minors engaging in sexually explicit conduct, when taken as a whole, appeal to the prurient interest in sex and portray sexual conduct in a patently offensive way; and that a reasonable person would not find serious literary, artistic, political, or scientific value in the visual images depicting minors engaging in sexually explicit conduct.

*Id.*

Here, the appellant was charged with one specification of viewing and possessing child pornography in violation of Clauses 1 and 2 of Article 134, UCMJ, and two specifications of viewing and possessing child pornography in violation of the newly enumerated Article 134, UCMJ, specification. The appellant was properly instructed on the elements and definitions for the first specification and admitted the images he viewed and possessed were of real people under the age of 18 years engaging in sexually explicit conduct. Accordingly, he pled providently to knowingly and wrongfully possessing and viewing visual depictions of minors engaging in sexually explicit conduct.

However, when the military judge turned to the enumerated specifications, he did not alter the elements or definitions to match this different, although similar, offense. As with the first specification, the initial guilty plea inquiry into Specification 2 focused solely on the appellant's viewing and possession of "visual depictions of minors." Using the same elements used for the previous specification, the appellant admitted to viewing and possessing visual depictions of minors engaging in sexually explicit conduct. Although he did not specifically say these depictions were of "real" minors, we find his plea provident as to the portion of the specification ("visual depictions of minors") that covered actual minors. When discussing his conduct with the military judge, the appellant used terminology similar to that used to describe the images as he had for Specification 1 and he did not disagree when trial counsel indicated the Government's view was that these images were of actual minors.

We do not, however, find his plea provident to the portion of Specification 2 that alleged he viewed and possessed visual depictions of what "appears to be minors." Although the appellant responded "yes" when the military judge asked if the images "either were minors or were images of what appeared to be minors," this conclusory question and answer is not a sufficient factual basis to sustain his plea to the "appears to

be" portion of the specification.[4] Furthermore, to the extent he was actually admitting he viewed and possessed any such virtual images, the appellant was not advised that such depictions must also be obscene in order to be covered by this specification. The record does not reflect he independently understood how his conduct fit within the definition used in charging him. Therefore, there is a substantial basis upon which to question whether the military judge or the appellant understood how the law related to the facts of his case, including the "critical distinction between permissible and prohibited behavior" as it relates to images of virtual child pornography. *United States v. Moon*, 73 M.J. 382, ___ (C.A.A.F. 2014) (quoting *United States v. Hartman*, 69 M.J. 467, 468 (C.A.A.F. 2011)). Given these problems, we except from the specification the words "or what appears to be minors."

A similar problem occurred during the providence inquiry for the third specification. We find the appellant pled providently to viewing and possessing images of actual minors engaged in sexually explicit conduct ("visual depictions of minors"). But his plea was not provident as to the "what appears to be minors" language, and we except that language from the specification.[5]

Having found error, we must consider whether we can reassess the sentence or whether we must return the case for a rehearing on sentence. This Court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has often held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

Here, we are able to reassess the sentence on the basis of the error noted, and do so after conducting a thorough analysis of the totality of circumstances presented by the appellant's case and in accordance with the principles articulated by our superior court in *Winckelmann* and *Sales*. In evaluating the *Winckelmann* factors, we first note these errors caused no change in the penalty landscape. Second, the appellant plead guilty in a judge alone court-martial. Third, we find the nature of the remaining offenses captures the gravamen of the original charges and the significant circumstances surrounding appellant's conduct remains admissible and relevant to the remaining offenses. Fourth, we have reviewed the subset of images that were introduced at the appellant's court-

---

[4] Similarly, in describing the appellant's conduct in South Dakota for the time period covering both Specification 1 and 2, the stipulation of fact states the appellant possessed and viewed "child pornography, to wit: visual depictions of minors, or what appears to be minors, engaging in sexually explicit conduct." After describing how the appellant searched for and downloaded the images, the stipulation states, "most of the time, the images or videos downloaded were images or videos of child pornography, to wit: visual depictions of minors, or what appeared to be minors, engaging in sexually explicit conduct." We find these cursory statements to also be insufficient to sustain the plea.

[5] Similarly, in describing the appellant's conduct in Qatar, the stipulation twice states the appellant possessed and viewed "child pornography, to wit: visual depictions of minors, or what appears to be minors, engaging in sexually explicit conduct." We find these cursory statements to also be insufficient to sustain the plea.

martial and conclude they do not depict images of virtual child pornography. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

Having concluded we can reassess the appellant's sentence, pursuant to our analysis, we affirm the sentence as approved by the convening authority. We are satisfied that, absent this error, the military judge would not have adjudged a sentence less than that approved by the convening authority.

*Conclusion*

The approved findings, as modified, and sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings, as modified, and sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38385