# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Senior Airman JAYMAR D. MULLINGS
### United States Air Force

## ACM 38623

## 30 September 2015

Sentence adjudged 8 May 2014 by GCM convened at Nellis Air Force Base, Nevada. Military Judge: Christopher M. Schumann (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 20 months, and reduction to E-1.

Appellate Counsel for Appellant: Major Isaac C. Kennen.

Appellate Counsel for the United States: Major Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

MITCHELL, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Senior Judge:

Consistent with his pleas, Appellant was convicted at a general court-martial of absence without leave and possession of child pornography, in violation of Articles 85 and 134, UCMJ, 10 U.S.C. §§ 885, 934. A military judge sentenced him to a dishonorable discharge, confinement for 24 months, and reduction to E-1. In accord with a pretrial agreement, the convening authority approved a sentence of a bad-conduct discharge, confinement for 20 months, and reduction to E-1.

On appeal, Appellant contends his guilty plea to possessing child pornography was improvident. We find Appellant is entitled to partial relief on this issue. We therefore modify the findings by exception and affirm the modified findings and the sentence.

*Background*

In December 2013, personnel from a chat website notified the National Center for Missing and Exploited Children (NCMEC) that one of its users appeared to be sharing video recordings of child pornography. After receiving two snapshots from a recently-streamed video, NCMEC ascertained the Internet Protocol (IP) address, which civilian law enforcement then used to identify Appellant as the subscriber for that IP address. A forensic analysis of electronic media seized from Appellant's dormitory room found images which led to the child pornography charge.

Appellant was interviewed under rights advisement regarding the allegation he possessed child pornography. The following day, Appellant drove to Los Angeles, California, and then to Mexico. In his guilty plea inquiry, Appellant stated he left base to "clear [his] head." Appellant's car was damaged in an accident, and he remained in Mexico while it was being repaired. Despite knowing he was required to report for work, Appellant did not contact any members of his unit. After military investigators learned Appellant's car contained a global positioning system installed by the finance company, they learned the location of the car in Mexico. Mexican law enforcement apprehended Appellant on 27 February 2014, at the request of the United States Marshals Service and turned him over. Appellant pled guilty to being absent without leave between 21 February and 28 February 2014.[1]

*Providence of Plea*

Appellant pled guilty to a charge that stated he knowingly and wrongfully possessed child pornography, "to wit, digital images of a minor, or what appears to be a minor, engaging in sexually explicit conduct." He now claims there is a substantial basis in law and fact to question his guilty plea because the stipulation of fact refers to "apparent child pornography" and "child erotica." According to Appellant, this raises a substantial basis to question whether Appellant's conduct was constitutionally protected.

Although we review questions of law from a guilty plea de novo, we review a military judge's acceptance of an accused's guilty plea for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). "An essential aspect of informing Appellant of the nature of the offense is a correct definition of legal concepts. The judge's failure to do so may render the plea improvident." *United States v. Negron*,

---

[1] As part of the pretrial agreement, the Government agreed not to go forward with the greater offense of desertion. The Government also agreed Appellant would "not be charged under the Uniform Code of Military Justice with any other charges arising out of the investigation that led to [the] court-martial."

60 M.J. 136, 141 (C.A.A.F. 2004). However, "an error in advising an accused does not always render a guilty plea improvident. Where the record contains factual circumstances that objectively support the guilty plea to a more narrowly construed statute or legal principle, the guilty plea may be accepted." *Id.* (quoting *United States v. James*, 55 M.J. 297, 300 (C.A.A.F. 2001)) (internal quotation marks omitted).

In order to prevail on appeal, the appellant "has the burden to demonstrate a substantial basis in law and fact for questioning the guilty plea." *Id.* (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)) (internal quotation marks omitted). The "mere possibility" of a conflict between the accused's plea and statements or other evidence in the record is not a sufficient basis to overturn the trial results. *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996) (quoting *Prater*, 32 M.J. at 436) (internal quotation marks omitted). "The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing *United States v. Care*, 40 C.M.R. 247, 250–51 (C.M.A. 1969)).

Appellant was charged with "knowingly and wrongfully possess[ing] child pornography, to wit: digital images of a minor, or what appears to be a minor, engaging in sexually explicit conduct." This was charged as a violation of the enumerated "child pornography" offense under Article 134, UCMJ, which governs misconduct committed on or after 12 January 2012.[2] *Manual for Courts-Martial*, *United States* (*MCM*), Part IV, ¶ 68b (2012 ed.) (enacted by Exec. Order No. 13593, 76 Fed. Reg. 78458 (Dec. 13, 2011)). This enumerated offense defines child pornography in a way that covers both actual and "virtual" child pornography—material that contains either "a visual depiction of an actual minor" or "an obscene visual depiction of a minor" engaging in sexually explicit conduct.[3] *MCM*, Part IV, ¶ 68b.c(1).[4]

---

[2] The language of the specification matches the model specification for the enumerated offense. *Manual for Courts-Martial*, *United States*, Part IV, ¶ 68b.f (2012 ed.).

[3] This latter part of this bifurcated definition apparently acknowledges the Supreme Court's holding that virtual child pornography that is not obscene implicates the First Amendment and the protections afforded speech. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 251 (2002) ("[T]he distribution of descriptions or other depictions of sexual conduct, not otherwise obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retains First Amendment protection."); *United States v. Bowersox*, 72 M.J. 71, 75 n.6 (C.A.A.F. 2013) (stating that a statute that prohibits obscene depictions of minors engaging in sexually explicit conduct is not constitutionally overbroad).

[4] The dual definition is reflected in the instructions found in the Military Judges' Benchbook, which state:

> The definition of "child pornography" used below will depend upon the evidence presented. The first definition below should be given where actual minors are in issue. The second definition below should be given where the depictions do not involve the use of actual minors, or there is some question as to whether actual minors were used in the depictions. If appropriate, give both definitions.

However, during the guilty plea inquiry, the military judge stated Appellant was charged with "wrongfully possessing visual images of a minor engaged in sexually explicit conduct," and he did not reference the charge's "appears to be" language.[5] Similarly, he instructed Appellant that the elements of this offense were that (1) Appellant knowingly possessed certain material, (2) he knew the material contained a *visual depiction of a minor* engaging in sexually explicit conduct, (3) his acts were wrongful, and (4) his conduct was of a nature to bring discredit upon the Armed Forces. (emphasis added). "Sexually explicit conduct" was defined in a manner consistent with the definition in the enumerated offense. *See MCM*, ¶ 68b.c(7).

Appellant responded affirmatively when asked if he knowingly possessed material that contained "visual depictions of minors engaging in sexually explicit conduct." Later in the inquiry, however, Appellant also answered affirmatively when asked if the materials depicted individuals that "appeared to be" minors who "appear[ed] to be engaging in . . . sexually explicit conduct." He then reverted back to the original definition as he described the physical characteristics that led him to conclude these individuals "were minors" and not adults, and agreed that when he possessed the images, he believed they "depicted minors engaging in sexually explicit conduct" and were not images of art.

Although Appellant did not specifically say he possessed depictions of "real" minors, we find his plea provident as to the portion of the specification ("digital images of a minor") that covered actual minors. Appellant was properly instructed on the elements and definitions for such a plea and admitted the images he possessed were of people under the age of 18 years engaging in sexually explicit conduct. Accordingly, he pled providently to knowingly and wrongfully viewing digital images of a minor engaging in sexually explicit conduct.[6]

---

> "Child pornography" means material that contains a visual depiction of an actual minor engaging in sexually explicit conduct.
>
> "Child pornography" (also) means material that contains an obscene visual depiction of a minor engaging in sexually explicit conduct. Such a depiction need not involve an actual minor, but instead only what appears to be a minor.

Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, ¶ 3–68b-1, Note 2 (10 September 2014).

[5] The stipulation of fact states Appellant admitted he collected images and videos of child pornography on his laptop and smart phone and defines "child pornography" as "material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." Later in the stipulation, it states that on 19 February 2014, Appellant "possessed child pornography, specifically obscene visual depictions of both male and female minor children engaging in sexually explicit conduct." No further discussion of these two categories is found in the stipulation of fact.

[6] The prosecution gave the military judge a disc that contained seven video files as a "representative sample of the child pornography" Appellant possessed. Having viewed these files, this court is convinced beyond a reasonable doubt that all seven of these files contain real children engaged in sexually explicit activity with adults or each other.

We do not, however, find his plea provident to the portion of the specification that alleged he possessed digital images of "what appears to be a minor." Although Appellant responded "yes" when the military judge asked if the images "appeared to be minors," this conclusory question and answer is not a sufficient factual basis to sustain his plea to the "appears to be" portion of the specification, when considered within the totality of the plea inquiry. Furthermore, to the extent he was actually admitting he possessed any such virtual images, Appellant was not advised that such depictions must be obscene in order to be covered by this specification.[7] The record does not reflect he independently understood how his conduct fit within that portion of the definition used in charging him. Thus, there is a substantial basis upon which to question whether Appellant understood how the law related to the facts of his case, including the "critical distinction between permissible and prohibited behavior" as it relates to images of virtual child pornography. *United States v. Moon*, 73 M.J. 382, 387 (C.A.A.F. 2014) (quoting *United States v. Hartman*, 69 M.J. 467, 468 (C.A.A.F. 2011)) (internal quotation marks omitted).

Given these problems, we except from the specification of Charge II[8] the words "or what appears to be a minor" and affirm only the following language:

> Specification: In that SENIOR AIRMAN JAYMAR D MULLINGS, United States Air Force, 99th Surgical Operations Squadron, Nellis Air Force Base, Nevada, did, at or near Nellis Air Force Base, Nevada, on or about 19 February 2014, knowingly and wrongfully possess child pornography, to wit: digital images of a minor engaging in sexually explicit conduct, and that said conduct was of a nature to bring discredit upon the armed forces.

*Admissibility of "Child Erotica"*

As discussed above, Appellant was found guilty of possessing "digital images of a minor, or what appears to be a minor" engaging in sexually explicit conduct. We have since narrowed that guilty finding to possessing "digital images of a minor." However, the stipulation of fact describes materials which fall outside of the specification, both as

---

[7] The instructions in the Military Judges' Benchbook define "obscene" as follows:

> "Obscene" means that the average person applying contemporary community standards would find that the visual images depicting minors engaging in sexually explicit conduct, when taken as a whole, appeal to the prurient interest in sex and portray sexual conduct in a patently offensive way; and that a reasonable person would not find serious literary, artistic, political, or scientific value in the visual images depicting minors engaging in sexually explicit conduct.

*Military Judges' Benchbook*, ¶ 3–68b-1, Note 2 (10 September 2014).

[8] The finding of guilty as to Charge I and its specification are affirmed.

originally charged and as narrowed by our decision. The stipulation states the forensic investigation "identified 1,452 files containing child pornography and *child erotica*. These images and videos depicted both male and female minors engaged in masturbation, sodomy, and sexual intercourse. Files containing images and videos of child pornography were saved on multiple folders on the C and D drives of [Appellant's] laptop computer and on a . . . smart phone." (Emphasis added).

Beyond the seven files provided to the military judge, no information was provided regarding how many of the other 1,445 images were classified as "child pornography" or as "child erotica" and no definition of "child erotica" was discussed. However, based on several military appellate decisions issued prior to Appellant's court-martial, we conclude the parties would have defined "child erotica" as material that depicts children as sexual objects or in a sexually suggestive way but the material is not sufficiently lascivious to meet the legal definition of sexually explicit conduct. *United States v. Anderson*, Army 20080669, unpub. op. at 3-4 (Army Ct. Crim. App. 10 September 2010) (citing *United States v. Vosburgh*, 602 F.3d 512, 520 (3d Cir. 2010)); *United States v. Paris*, NMCCA 201200301, unpub. op. at 10 (N.M. Ct. Crim. App. 30 July 2013); *see also United States v. Warner*, 73 M.J. 1, 3 (C.A.A.F. 2013) (citing *Vosburgh*, 602 F.3d at 538); *Moon*, 73 M.J. at 387

Unlike child pornography and obscenity, the possession of images of minors, even if nude, that fall into neither of those categories implicates the protections of the First Amendment. *Moon*, 73 M.J. at 387. In order to plead guilty to an Article 134, UCMJ, offense regarding the possession of otherwise constitutionally protected information, the military judge and the accused must establish why a military member's possession of such material would be, and was, service discrediting or prejudicial to good order and discipline. *Id.* That colloquy must include a proper explanation by the military judge and an understanding by the accused of the constitutional implications of the charge. *Id.* No such explanation or understanding exists in this case.[9] Therefore, Appellant's guilty plea does not extend to the possession of images of "child erotica."

Evidence of such uncharged material can, however, be admissible in sentencing under certain circumstances. In the absence of an objection at the time of trial, decisions to admit evidence are reviewed for plain error. *United States v. Lewis,* 69 M.J. 379, 383 (C.A.A.F. 2011). Such evidence must be "directly relating" to the offense of which the appellant had pled guilty and it must also pass the balancing test of Mil. R. Evid. 403. Rule for Courts-Martial (R.C.M.) 1001(b)(4); *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007). Historically, military courts have interpreted the meaning of "directly related" to be a function of how strong the nexus is between the proffered

---

[9] During the guilty plea inquiry, Appellant did generically agree that the "images" were not "art or some other kind of format." and said "yes" when asked if he understood the difference between possessing "art work and . . . actual images of minors engaging in sexually explicit conduct." That distinction was never explained on the record, and we find it insufficient to sustain a finding that Appellant's guilty plea covered these materials.

uncharged misconduct and the offenses of which the accused has been convicted. *Hardison*, 64 M.J. at 281. Our superior court has asserted this connection must be direct and "closely related in time, type, and/or often outcome, to the convicted crime." *Id*. at 281–82.

Although the stipulation of fact and guilty plea inquiry do not provide details about the precise relationship between the child erotica and the child pornography, we find they are sufficiently closely related to be admissible under R.C.M. 1001(b)(4). Appellant admitted he downloaded the visual depictions over time through a website and saved the files on his laptop, as well as backing them up on an online cloud-based system. Based on the evidence in the record of trial, it is clear that Appellant repeatedly went to the Internet to search for child pornography and then downloaded over 1,400 files that either contained images of children engaging in sexually explicit conduct or depicted children as sexual objects or in a sexually suggestive way. His possession of the "child erotica" was thus interwoven in the res gestae of the charged crime and provided important context about the crime for the sentencing authority. *See Hardison*, 64 M.J. at 282, (citing *United States v. Metz*, 34 M.J. 349, 351–52 (C.M.A. 1992)). We find Appellant's possession of "child erotica" is closely related in time, type, and outcome to his possession of child pornography, and thus was admissible under R.C.M. 1001(b)(4). [10] Furthermore, the lack of a defense objection to the inclusion of the "child erotica" in the stipulation of fact is also evidence of the defense's understanding that these materials were admissible as related to the charged images.

For similar reasons, we do not find the probative value of the admission of the "child erotica" to be substantially outweighed by the prejudicial impact of the same. A military judge is presumed to know the law and apply it correctly, absent evidence to the contrary. *See United States v. Phillips*, 70 M.J. 161, 166 (C.A.A.F. 2011) (citing *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000)). We have no reason to believe the military judge considered the existence of "child erotica" for anything other than its proper purpose as an aggravating circumstance of Appellant's possession of child pornography, as allowed by R.C.M. 1001(b)(4).

---

[10] Possession of child erotica has been found admissible in litigated cases as tending to indicate knowledge of the nature of the charged contraband material and negate the possibility that the files were downloaded by accident or mistake. *See, e.g., United States v. Mann*, 26 M.J. 1, 2–4 (C.M.A. 1988) (providing that possession of magazines were admissible to prove the accused's intent to satisfy his sexual desires); *cf. United States v. Sanchez*, 59 M.J. 566, 570 (A.F. Ct. Crim. App. 2003) (allowing subscriptions "to numerous e-groups described as nude teen sites" as evidence of knowing possession of child pornography), *rev'd in part on other grounds*, 60 M.J. 329 (C.A.A.F. 2004); *United States v. Rhea*, 29 M.J. 991, 998 (A.F.C.M.R. 1990) (providing that possession of books describing sexual exploitation of young girls was probative of motive), *set aside on other grounds*, 33 M.J. 413 (C.M.A. 1991); *United States v. Lips*, 22 M.J. 679, 682 (A.F.C.M.R. 1986) (holding that possession of graphically posed photographs showing women being sexually abused was a clear indication of the appellant's penchant for sexual aberration); *United States v. Woodyard*, 16 M.J. 715 (A.F.C.M.R. 1983) (holding that possession of homosexual magazines was probative of intent to commit sodomy).

*Reassessment*

Having found error regarding Appellant's guilty plea, we must consider whether we can reassess the sentence or whether we must return the case for a rehearing on sentence. This court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has often held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

Here, we are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by Appellant's case and in accordance with the principles articulated by our superior court in *Winckelmann* and *Sales*. In evaluating the *Winckelmann* factors, we first note these errors caused no change in the penalty landscape. *See Winckelmann*, 73 M.J. at 15–16. Second, Appellant pled guilty in a judge alone court-martial. *See id.* at 16. Third, we find the nature of the remaining offenses captures the gravamen of the original charges and the significant circumstances surrounding Appellant's conduct remain admissible and relevant to the remaining offenses. *See id.* Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial. *See id.*

Having concluded we can reassess Appellant's sentence, pursuant to our analysis, we affirm the sentence as approved by the convening authority. We are satisfied that, absent this error, the military judge would not have adjudged a sentence less than that approved by the convening authority.

*Conclusion*

The approved findings, as modified, and sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings, as modified, and sentence, as reassessed, are **AFFIRMED**.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38623